(566 P.2d 389)
No. 48,512

BARBARA OIL COMPANY, *Appellee,* v. PATRICK PETROLEUM CO., *Appellant.*

Petition for review denied September 12, 1977.

Opinion filed July 1, 1977.

*John P. Woolf* and *Lee Thompson* of Martin, Pringle, Schell & Fair, of Wichita, for the appellant.

*Gerald Sawatzky* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, and *William E. Deitrick* of Gardner, Carton, Douglas, Chilgren & Waud, of Chicago, Illinois, for the appellee.

Before SPENCER, P.J., ABBOTT and SWINEHART, JJ.

SWINEHART, J.: This is an action based on breach of a contract to purchase producing oil and gas leases. The case went to a jury on special questions, upon which judgment was entered for the plaintiff in the entire amount of plaintiff's prayer, together with interest.

Plaintiff Barbara Oil Company (hereinafter referred to as Barbara or appellee) is a family-owned oil and gas company with its main office in Chicago and with a two-man district office in Wichita. In 1972, Barbara decided to close its Wichita office, commenced plans for selling all of its producing properties in Kansas, and circulated among some 150 prospective purchasers a brochure announcing its desire to sell various oil and gas properties in Kansas. This brochure solicited bid-offers on seven different "packages" of producing oil and gas properties. The largest and most valuable "package" was Package 4, which consisted of gas-producing leases near Medicine Lodge. Barbara received numerous bids on Package 4. When all of the bids were opened and examined, Patrick Petroleum Company of Jackson, Michigan (hereinafter referred to as Patrick or appellant), was the high bidder on the Package 4 property. That bid was in the amount of $2,049,000 and contained the following comment:

"Offer is subject to acceptable title for all properties, included in Package 4, by Patrick Petroleum."

On April 24, 1973, Barbara's vice-president (Mr. William Ziska) advised Patrick by telephone that its offer was accepted. This telephonic acceptance was confirmed by letter of April 25, 1973. Pursuant to the terms of the parties' agreement, a 10% deposit was to be paid May 7, 1973.

Patrick immediately began a flurry of activities relating to the Package 4 property. First of all, Patrick employed William Schell, a Wichita attorney, to prepare a title opinion on 'Package 4 property. Mr. Schell completed his work on or about April 30, 1973, and at that time advised Patrick that, in his opinion, there were potential problems relating to the validity of existing leases on Package 4 property. Consequently, Mr. Schell recommended that appellant obtain "a broad strong indemnification against anything that . . . might cause a loss to Patrick."

Simultaneously, Patrick was scurrying around trying to obtain necessary financing and attempting to locate a buyer for one-half interest in the Package 4 property.

When May 7, 1973, arrived (the day Patrick's 10% deposit was due) Patrick refused to pay the 10% unless Barbara would agree to an indemnification clause. Barbara declined to do so at that time. However, the next day Mr. Ziska, on behalf of Barbara,

contacted Patrick and offered indemnification from the date of first production under the leases to the date of closing. Patrick responded that such an offer would help, and it was then agreed that the 10% deposit would be paid on May 14, 1973. However, on May 14th Mr. Ziska received a phone call from Patrick's representative who was apologetic, but who, nonetheless, advised Mr. Ziska that Patrick would have to "withdraw their bid . . . because they couldn't get the financing." The withdrawal of Patrick's bid was confirmed by telegram dated May 14, 1973, which provided:

> "As per our telephone conversation of this date we hereby notify you that due to our inability to formally secure adequate financing which had previously been tentatively agreed upon, we hereby withdraw our bid as previously submitted to you for Package Number Four covering the Medicine Lodge Gas Field Properties."

This telegram was followed up by letter dated May 15, 1973, which again stated the reason for withdrawal was "our failure to obtain the appropriate financing for this purchase. . . ."

Thereafter, Barbara was able to sell Package 4 to Kewanee Oil Company for $1,650,000. Barbara then commenced this action for breach of contract, seeking as damages the difference between the original contract price ($2,049,000, eventually modified to $2,029,000) and the resale price to Kewanee ($1,650,000). Judgment was rendered for Barbara after the jury responded to special questions in favor of Barbara for the entire amount prayed for, plus interest.

We first turn our attention to appellant's contention that it was entitled to forego performance under the contract as a matter of law, pursuant to the condition that the offer was "subject to acceptable title for all properties."

The legal questions involved revolve around Patrick's "conditional offer." Generally speaking, a contracting party may impose such conditions to the contract as he desires, assuming they are not illegal conditions. A proviso in a contract creates a condition, and the usage of the words "subject to" usually indicates that a promise is not to be performed unless the condition is satisfied. 17 Am.Jur.2d, Contracts § 320, p. 749.)

In *Wallerius v. Hare*, 194 Kan. 408, 399 P.2d 543, the Kansas Supreme Court discussed condition precedent. The Court said:

> "A condition precedent is something that it is agreed must happen or be

performed before a right can accrue to enforce the main contract. It is one without the performance of which the contract, although in form executed and delivered by the parties, cannot be enforced. A condition precedent requires the performance of some act or the happening of some event after the terms of the contract, including the condition precedent, have been agreed on before the contract shall take effect. [Citations omitted.]" (p. 412.)

Without doubt, had Patrick been able to show that it withdrew from the contract because title was not acceptable, it would have been justified in not performing pursuant to the contract, as a matter of law. However, the fact that an offer is conditioned in and of itself does not justify withdrawal from the contract. Instead, the offerer must affirmatively show that the withdrawal from the contract occurred because of the condition's failure. Here, whether or not Patrick withdrew from the contract because of inadequate title was a question to be decided by the jury. The jury concluded that Patrick did not withdraw from the contractual obligations because of dissatisfaction with title. That conclusion on the jury's part is supported by substantial competent evidence. For example, *none of the written material* surrounding Patrick's withdrawal from the contract (the telegram and the letter) *mentioned inadequacy of the title* as a reason for withdrawal. Instead, inadequate financing was the reason given. Inasmuch as the jury's decision was supported by substantial and competent evidence, that decision must prevail on appeal. (*Clardy, Administrator v. National Life & Accident Ins. Co.,* 1 Kan. App.2d 1, 561 P.2d 892.)

We simply hold that although parties can place conditions precedent on their contracts, they cannot escape liability under the contracts merely by claiming the conditions have not been met. The balking party must affirmatively show that (1) the condition precedent actually failed and (2) because of such failure, the contract will not be performed. Whether or not a contracting party's refusal to perform was because of a genuine and good faith claim that a condition precedent failed is a question for the jury. Specifically, whether Patrick backed down because of faulty title or because of inadequate financing was a question of fact, and thus properly within the province of the jury. (47 Am.Jur.2d, Jury §§ 3, 14, pp. 628, 637.)

Next, a brief look at Patrick's contention that the trial court erred in refusing to allow the expert testimony of one Ferd Evans. Mr. Evans' proffered testimony had to do with oil and gas lease

title problems. Inasmuch as we have affirmed the jury's conclusion that Patrick's breach of contract was because of inadequate financing and not faulty title, we consider this "expert testimony" issue to be moot. We parenthetically note that the trial judge allowed similar testimony from another witness, and Evans' testimony would have been cumulative. A trial judge has wide discretion in determining the admissibility of expert testimony. (*Borth v. Borth,* 221 Kan. 494, 561 P.2d 408.) Patrick has fallen far short of indicating an abuse of such discretion.

Appellant has next asserted that in the event this court approves the lower court's finding that an unjustified breach occurred, then the total amount of recovery should be reduced because of Barbara's failure to mitigate. As we have previously indicated, upon Patrick's withdrawal from the contractual agreement, Barbara sold Package 4 to Kewanee Oil Company for $1,650,000. This Barbara did, even though at least two other companies had submitted bids which were slightly higher than the $1,650,000 figure.

The law is clear that a plaintiff cannot recover for damages which could have been reasonably avoided. As stated at Restatement of the Law, Contracts, § 336 (1), p. 535:

"Damages are not recoverable for harm that the plaintiff should have foreseen and could have avoided by reasonable effort without undue risk, expense, or humiliation."

This section of the Restatement is further expounded in Comment (*a*), p. 536, as follows:

"After the plaintiff has reason to know that a breach has occurred, . . . he is expected to take such steps to avoid harm as a prudent person would take. He cannot get damages for harm that could thus be avoided. . . . It is not reasonable to expect the plaintiff to avoid harm if at the time for action it appears that the attempt may cause other serious harm. He need not enter into other risky contracts, incur unreasonable inconvenience or expense, disorganize his business, or put himself in a humiliating position or in one involving loss of honor and respect."

These sentiments have been recognized in Kansas. See *Richards Aircraft Sales, Inc. v. Vaughn,* 203 Kan. 967, 457 P.2d 691; *Cain v. Grosshans & Petersen, Inc.,* 196 Kan. 497, 413 P.2d 98.

The jury below concluded that Barbara acted "as required by the law . . . in reselling the properties in question." We again feel that the jury's finding was supported by substantial and competent evidence (*Clardy, Administrator v. National Life &*

*Accident Ins. Co.,* supra) and therefore affirm the finding. The evidence before the jury indicated that upon Patrick's breach of the purchase contract, havoc reigned in Barbara's ranks. Package 4 was one of Barbara's major assets, worth over a million dollars, and with Barbara's plans on closing its Wichita office, Package 4 had to be sold quickly. Furthermore, several weeks had elapsed since the final bids had been submitted, and Barbara's communications and negotiations with other bidders had all but ceased.

While Barbara was in this dark hour, Kewanee's bright light appeared. Kewanee was immediately available and had successfully bid on several of the smaller packages which Barbara had sold. Kewanee was further in a position to make a quick decision and close the deal on Package 4 on the spot. While Kewanee had originally offered only $1,450,000, Barbara was eventually able to obtain $1,650,000. In sharp contrast with Kewanee's good business reputation, and Barbara's confidence in Kewanee, Barbara feared possible trouble areas with those companies which had submitted slightly higher bids.

With this evidence in mind, we feel that Barbara acted prudently and reasonably. For us to tell Barbara that it had to face possible risky contracts, disorganization, inconvenience and expense merely to attempt to gain a few extra thousand dollars would be flying in the face of the clear law in this area. We agree with the jury's determination that Barbara Oil acted "as required by the law."

Appellant next complains that it was denied adequate discovery. The record indicates that although appellant filed requests for production of documents, seeking combination bids regarding Package 4 property, the lower court disallowed such requests. We think the lower court's ruling was contrary to K.S.A. 60-234 and the overall purpose of discovery.

K.S.A. 60-234 provides, in pertinent part:

" . . . *(a) Scope.* Any party may serve on any other party a request (1) to produce and permit the party making the request, or someone acting on his behalf, to inspect and copy, any designated documents . . . which are in the possession, custody or control of the party upon whom the request is served; . . ."

This provision is an integral part of our discovery process.

". . . Discovery has a vital role in our code of civil procedure with its notice type pleading and its basic philosophy that mutual knowledge of all relevant facts is essential to the proper disposal of litigation and that prior to trial every party to

a civil action is entitled to the disclosure of all such information in the possession of any person, unless the information is privileged. . . ." (*Alseike v. Miller,* 196 Kan. 547, 554, 412 P.2d 1007.)

The purpose of K.S.A. 60-234 "is to make relevant and nonprivileged documents and objects in the possession of one party available to the other, thus eliminating strategic surprise and permitting the issues to be simplified and the trial to be expedited. The rule is to be liberally, rather than narrowly, construed. . . ." (8 Wright & Miller, Federal Practice and Procedure, Civil § 2202, p. 585-586.)

Those records in Barbara's possession relating to the Package 4 property, including all combination bids, were not privileged. However, Barbara claims such records were irrelevant. We do not agree. One of the major issues involved in this suit was mitigation. Thus, the amount offered by other bids which Barbara could have accepted following Patrick's breach was highly relevant. Patrick should have been granted broad access to those documents sought.

The problem then on this appeal is: What is a party's remedy when that party has been disallowed proper discovery? This is a true dilemma. If the judge disallows proper discovery, the aggrieved party is forced to continue the litigation on through trial and then, if appeal is eventually taken, must attempt to show some type of prejudice resulting from the denial of discovery. Such prejudice is difficult to show on appeal. Trial judges should recognize this dilemma, and should, accordingly, adhere to the mandate that discovery rules be "liberally construed."

Although we feel Patrick's requested discovery should have been allowed, the disallowance, under the circumstances of this case, was not reversible error. This action eventually went to jury trial and Patrick was then able to obtain most of the information regarding the mitigation issue. In fact, such material was available and offered during the course of the trial. Therefore, we find that the appellant has failed to show that it was in any way prejudiced by the court's failure to allow use of this discovery tool.

Finally, we turn to appellant's contention that 6% prejudgment interest should not have been allowed. The trial court found that "the amount of the difference between the contract price and the resale price was readily ascertainable on June 1, 1973, and in

view of the rather transparent excuse for non-performance advanced by the defendant, justice requires that interest be allowed on the difference." (The reader will recall that June 1, 1973, was shortly after Patrick had breached the contract and Barbara had resold Package 4 to Kewanee.)

The only question to be resolved is whether or not a liquidated debt existed on and after June 1, 1973. (See K.S.A. 16-201.) A claim is liquidated when it "becomes definitely ascertainable by mathematical computation." (*Westamerica Securities, Inc. v. Cornelius,* 214 Kan. 301, 520 P.2d 1262; *First National Bank v. Bankers Dispatch Corporation,* 221 Kan. 528, 562 P.2d 32.)

Once Patrick breached the contract, and Barbara had resold to Kewanee, the difference between the contract price and the resale price was capable of mathematical computation. This being so, we feel that a liquidated debt did exist and the court acted properly in allowing 6% interest on that debt.

Judgment of the trial court is affirmed in all respects.