(667 P.2d 902)
No. 54,706

NORMAN MEARS, *Appellant,* v. HARTFORD FIRE INSURANCE COMPANY, A Corporation; The Estate of Robert Louis Pedigo, Deceased; and MARVIN D. ORSBORN, d/b/a CHEYENNE COUNTY FARM BUREAU INSURANCE COMPANY, *Appellees.*

Opinion filed August 11, 1983.

*James M. Milliken,* of Milliken & Condray, Chartered, of St. Francis, for appellant.

*Michael J. Day,* of Kite, Day & Jensen, of St. Francis, for appellees Hartford Fire Insurance Company and the Estate of Robert Louis Pedigo, Deceased.

*Jerry D. Fairbanks,* of Whalen & Fairbanks, P.A., of Goodland, for appellee Marvin D. Orsborn.

Before FOTH, C.J., REES and SPENCER, JJ.

REES, J.: This lawsuit arises out of the refusal of defendant Hartford Fire Insurance Company to pay a claim made by plaintiff on a property insurance policy. Plaintiff appeals from a judgment denying recovery for the death loss of 53 calves.

In consideration for $928 paid to it by plaintiff, Hartford issued to him its policy No. 6985 on December 5, 1979. The policy includes an incorporated printed attachment, entitled "Feed Lot Form — Yard Cover," modified and completed by deletion, interlineation and insertion by Hartford. The presently pertinent terms and provisions of the policy are all recited in the attachment and are as follows:

"The insurance provided hereunder is on livestock consisting of cattle and calves owned by the assured or by others placed in the care and custody of the assured while located in the feed lots, pens and sheds of Norman Mears.
"SITUATE: 6 miles radius of Enders, Nebraska
and/or other temporary locations to which the cattle and calves may be moved to prevent a loss.
"EFFECTIVE DATE: The policy shall take effect December 5, 1979 and continue in force and effect until May 1, 1980.

"Limit of Liability in any one loss, casualty or disaster is $10,000,000.00.

"RATE $2.00 per head (464 head) = $928.00 Fully. Earned Premium

. . . .

"1 COVERAGES:

"(a) This policy shall cover against loss by death only and occurring within 24 hours after cessation of an insured peril, resulting from or made necessary by:

. . . .

"(11) Smothering directly caused by a blizzard or snowstorm . . . .

"2 NOTICE OF LOSS:

. . . .

"(c) Any loss under this policy shall be adjusted with and payable to Norman Mears but only as trustee, for the use and benefit of the property destroyed, and it is further understood and agreed that when this Company shall pay any claim for loss to Norman Mears as trustee, that this shall fully discharge this Company's liability for such claims for loss and damage and that this Company shall be in no way responsible for the distribution of said money by said trustee.

. . . .

"3 VALUATION:

"(a) In the event of loss under this policy, the liability of this Company shall not exceed the current market value of cattle and calves for slaughter, stocker, or feeder purposes . . . .

"4 REPORTING AND PREMIUM PAYMENT:

"(a) The assured will submit monthly to this Company . . . or its agent a properly verified statement in writing showing the total number of head of cattle and calves in the feed lots, pens and sheds on the last day of each month and pay premium thereon at the rate of:

Two Dollars ($2.00) per head (464 head)

= $928.00 Fully Earned Premium for the Policy Term.

Such statements are to be submitted and premium payment is to be made within 15 days after the end of each month.

. . . .

"(c) In the event of loss to insured cattle and calves, the Company shall not be liable for a greater proportion of such loss than the total number of cattle and calves last reported by the insured prior to loss bears to the actual total number of head of cattle and calves at risk hereunder as of the date for which such report was made.

"(d) Inspection and Audit: The Company shall be permitted to examine the assured's records at any reasonable time during the currency of this policy, or within a period of one year after the policy is terminated, so far as they relate to livestock in the feed lots, pens and sheds."

At the inception of the policy coverage on December 5, 1979, plaintiff owned 374 head of cattle — 286 cows, 7 bulls and 81 yearlings. On March 30, 1980, plaintiff lost 53 calves by death resulting from smothering directly caused by a blizzard. The dead calves had been born to plaintiff's cows after December 5,

1979. Although not shown in the record, the parties concede and agree the 374 cattle owned and held by plaintiff on December 5, 1979, and calves born to plaintiff's cows after that date composed plaintiff's herd when the blizzard struck and the cattle and calves composing plaintiff's herd never exceeded 464 in total number.

When plaintiff sustained the loss of his calves, he had made a single premium payment in consideration of Hartford's conditional promise to pay. Plaintiff and Hartford were parties to a unilateral contract. 1 Williston on Contracts § 13 (3d ed. 1957). The terms and conditions of its promise were stated by Hartford in the foregoing language of the policy it issued.

"[W]here parties have carried on negotiations, and have subsequently entered into an agreement in writing with respect to the subject matter covered by such negotiations, the written agreement constitutes the contract between them and determines their rights. [Citations omitted.]" *Custom Built Homes Co. v. State Comm. of Rev. and Taxation,* 184 Kan. 31, 37, 334 P.2d 808 (1959).

See also *Weiner v. Wilshire Oil Co.,* 192 Kan. 490, 495, 389 P.2d 803 (1964).

"If a contract is clear and unambiguous . . . the terms thereof must be construed in such manner as to give effect to the intention of the parties at the time they entered into the contract, and this *must* be determined from the four corners of the instrument itself. [Citation omitted.] Words cannot be read into the agreement which impart an intent wholly *unexpressed* when it was executed. [Citation omitted.]" (Emphasis added.) *In re Estate of Johnson,* 202 Kan. 684, 689, 452 P.2d 286 (1969).

"A policy of insurance is a written contract. . . . [W]here an insurance contract is unambiguous it must be enforced according to its terms. . . . Where a contract is not ambiguous, the court may not make another contract for the parties, but its function is to enforce the contract *as made.*" (Emphasis added.) *Blair v. Automobile Owners Safety Ins. Co.,* 178 Kan. 615, 616-617, 290 P.2d 1028 (1955).

"The construction and interpretation of a contract unambiguous in its terms is a question of law for the court [citation omitted] and the intention of the parties and the meaning of such a contract are to be deduced from the plain, general and common meaning of those terms [citations omitted.]" *Duffin v. Patrick,* 212 Kan. 772, 778, 512 P.2d 442 (1973).

"Facts and circumstances surrounding the execution [of an instrument] become competent only in the event the instrument is ambiguous on its face . . . ." *Lawrence v. Cooper Independent Theatres,* 177 Kan. 125, 131, 276 P.2d 350 (1954); *In re Estate of Koellen,* 162 Kan. 395, 399, 176 P.2d 544 (1947).

"[W]hether a written contract is free from ambiguity is a judicial function." *Hird v. Williams,* 224 Kan. 14, 16, 577 P.2d 1173 (1978).

See also *First National Bank of Hutchinson v. Kaiser,* 222 Kan. 274, 278, 564 P.2d 493 (1977).

"Regardless of the construction of a written instrument made by the trial court, on appeal the instrument may be construed and its legal effect determined by the appellate court." *Stanfield v. Osborne Industries, Inc.,* 232 Kan. 197, 198-199, 654 P.2d 917 (1982).

See also *State Bank of Parsons v. First National Bank in Wichita,* 210 Kan. 647, 649, 504 P.2d 156 (1972); *Brungardt v. Smith,* 178 Kan. 629, 635, 290 P.2d 1039 (1955).

As this case comes before us the sole question is whether plaintiff's 53 calves that smothered to death as a result of the blizzard were property whose risk of loss was insured against by Hartford. There is no other question. Four cows suffered a similar fate; the trial judge entered judgment against Hartford for their value; Hartford has taken no appeal; therefore, any other asserted or assertable policy defenses have been finally determined in plaintiff's favor.

Hartford's defense on the issue for our resolution was wholly supported in the trial court and is wholly supported before us by reliance upon the evidence of plaintiff's conversations with Marvin D. Orsborn, the St. Francis, Kansas, insurance agent plaintiff asked to procure blizzard insurance for his cattle, and conversations and communications plaintiff and Orsborn had with Kansas Insurance Services, of Beloit, Kansas, and Robert Pedigo, of Lakin, Kansas, through whom the Hartford policy was acquired. Relying upon these conversations and communications, Hartford argues plaintiff did not intend to acquire coverage for calves born to his cows after December 5, 1979, and the 53 calves were not insured property because it was not the intent of plaintiff and Hartford that there be insurance against their loss. We find this argument fatally flawed. All these communications and negotiations transpired prior to the time plaintiff and Hartford entered into their written contract, that is, December 5, 1979, the date as of which plaintiff had paid his premium ("Fully Earned Premium") in full and Hartford issued its policy. Plainly put, Hartford is bound by the words of the policy.

The inclusion of subparagraphs (a) and (c) of the "Reporting and Premium Payment" section of Hartford's policy lends it the characteristic of a so-called reporting form policy, while inclusion of subparagraph (d) of that section lends it the characteristic of a so-called audit policy. The added recitation that a single

fully earned premium payment was the consideration for Hartford's conditional promise to pay makes it clear the policy is a hybrid. Nonetheless, the initial question for our consideration is whether the policy is ambiguous with respect to the plaintiff's claim at issue.

The policy explicitly states "the insurance provided hereunder is on livestock consisting of cattle and calves owned by" plaintiff. With but one immaterial exception the quoted policy language explicitly refers to its subject as "cattle and calves." Hartford asserts no policy exclusion. For the purpose of this case, the property on which Hartford's policy states it provides insurance is unambiguously described simply as cattle and calves owned by plaintiff. They are not described by breed, gender or age. There is no identification of specific or particular animals. There is no identification by date of acquisition nor is there any requirement cattle or calves whose loss is insured against must have been in existence at the inception of the policy. In section 4 of the policy, provision is made for the adjustment of Hartford's loss payment liability in the event the number of head of cattle and calves whose loss is insured against exceeds the number utilized in computation of the premium payment made to Hartford. Under these circumstances, the policy manifests Hartford's agreement that the subject of its conditional promise to pay is a "shifting risk." See *The Farmers' Mutual Fire Insurance Association of Allen Co. v. Kryder,* 5 Ind. App. 430, 432-33, 31 N.E. 851 (1892); *Thorp v. Insurance Co.,* 75 N. H. 251, 251-52, 72 A. 690 (1909); 1 Couch on Insurance 2d § 6:27, p. 264 (1959).

Section 4 (c) is inapplicable. The cattle and calves "at risk" did not exceed the total number of cattle and calves for which plaintiff had made premium payment.

We conclude Hartford's written conditional promise to pay, when applied to the facts of this case, is clear and unambiguous and that promise must be enforced according to its terms. Hartford, on its policy, is liable to plaintiff for the 53 calves' "market value . . . for slaughter, stocker or feeder purposes."

Our decision that Hartford is liable on its policy for the value of the 53 calves, leaves open plaintiff's claim for attorney fees under K.S.A. 40-256. Whether Hartford's refusal to pay the full amount of plaintiff's loss was without just cause or excuse is a fact question. *Farm Bureau Mutual Ins. Co. v. Carr,* 215 Kan. 591,

598, 528 P.2d 134 (1974); *Sloan v. Employers Casualty Ins. Co.,* 214 Kan. 443, 449, 521 P.2d 249 (1974); *Hand v. State Farm Mut. Auto. Ins. Co.,* 2 Kan. App. 2d 253, 261, 577 P.2d 1202, *rev. denied* 225 Kan. 844 (1978). It remains for decision by the trial court and if decided adversely to Hartford, the amount to be awarded also is for decision by the trial court.

The dismissal of plaintiff's claim against Hartford for punitive damages must be affirmed. No tort or wrong independent of the breach of contract claim is supported by the evidence. See *Hess v. Jarboe,* 201 Kan. 705, 708-709, 443 P.2d 294 (1968).

The dismissal of plaintiff's claims against Marvin Orsborn and Carol Dumler, executor of the estate of Robert Louis Pedigo, deceased, the substituted party for Robert Louis Pedigo, must be affirmed. Our decision that Hartford is liable on its policy eliminates the basis for any claims of misrepresentation or negligent failure to procure insurance by Orsborn or Pedigo.

This case is remanded to the trial court with instructions to enter judgment in favor of plaintiff against Hartford for the 53 calves' March 30, 1980, market value for slaughter, stocker or feeder purposes and for attorney fees in such amount, if any, as may be found owing under K.S.A. 40-256. In all other respects, the judgments of the trial court are affirmed.