No. 79,581

MARVIN REIMER, d/b/a MANAGEMENT RECRUITERS OF WICHITA, *Appellant,* v. THE WALDINGER CORPORATION, d/b/a/ COMMERCIAL AIR CONDITIONING, HEATING AND REFRIGERATION, COMMERCIAL SERVICE DIVISION, also d/b/a/ J.H. BOWMAN/COMFORT SYSTEMS, *Appellee.*

(959 P.2d 914)

Opinion filed May 29, 1998.

*Patrick H. Edwards,* of Wichita, argued the cause and was on the brief for appellant.

*Stephen M. Kerwick,* of Foulston & Siefkin, L.L.P., of Wichita, argued the cause, and *Jay F. Fowler,* of the same firm, was with him on the brief for appellee.

The opinion of the court delivered by

SIX, J.: This case considers a personnel recruiter's claim for a placement fee. The district court found that there was no contract between plaintiff Marvin Reimer, d/b/a Management Recruiters of Wichita (Reimer), and defendant The Waldinger Corporation (Waldinger), requiring Waldinger's payment of the claimed fee. Reimer appeals, also advancing a quantum meruit claim. Quantum meruit was not raised below until Reimer filed his post-trial motion to reconsider. The district court denied that motion. Finding no error, we affirm.

Reimer referred four candidates for a commercial heating and air-conditioning sales position to Waldinger's commercial division. Those four included Pat Lang, who was hired, and Brent Martin,

whose later hiring by J.H. Bowman Comfort Systems (J.H. Bowman), Waldinger's residential division, led to this litigation.

While Don Hammond, Waldinger's Commercial Service Division manager, was interviewing the referred candidates, Reimer faxed a "fee policy" containing the referral terms. The Commercial Service Division was one of two separate, independent Waldinger businesses in the Wichita area. The other was J.H. Bowman, which served the residential home and consumer market. J.H. Bowman was located apart from the Commercial Service Division and was not included in Hammond's management responsibilities. Hammond had only one position available at the Commercial Service Division. He had no authority to hire for J.H. Bowman. After receiving the fax, Hammond contacted Reimer and told him that Waldinger did not agree to the provisions of the "fee policy" as written.

Hammond and Reimer eventually agreed on a fee for hiring Pat Lang which was less than the fee specified in the faxed fee policy. The agreed fee for hiring Lang was paid.

The faxed fee policy specified that if Waldinger or its affiliate hired any of the referred candidates within 1 year, a referral fee would be owed. One of the three candidates, Brent Martin, originally referred but not hired by Waldinger's commercial division, eventually was hired by J. H. Bowman. Martin, an unsuccessful candidate for Lang's position, had continued to approach Hammond even though there were no other positions available. Eventually, Hammond suggested that Martin give J.H. Bowman a call. Martin's individual approach to J.H. Bowman was successful. Reimer claimed a fee for Martin's employment. Waldinger denied that a fee for Martin's hiring was owing.

The district court found, "At best [the faxed fee policy] was a written offer, which was rejected by Mr. Hammond." The district court reasoned that

"there was a verbal contract between the plaintiff and Mr. Hammond, but . . . the terms of that contract were limited and did not include many of the terms and conditions contained in the written fee policy. The only agreement between Mr. Hammond and the plaintiff was that the plaintiff would refer applicants to Mr. Hammond for one sales opening in the commercial and industrial

division. Mr. Hammond hired one of the referrals, and the Waldinger Corporation satisfied its obligation to the plaintiff when it mailed in the referral fee which the plaintiff accepted. All the other conditions and stipulations in the fee policy were things that Mr. Hammond never agreed to, and the Court finds that the plaintiff has failed to prove otherwise."

The district court held that Waldinger owed no referral fee to Reimer for hiring Martin. We find no error.

## DISCUSSION

The question whether a binding contract was entered into depends on the intention of the parties and is a question of fact. *Augusta Bank & Trust v. Broomfield*, 231 Kan. 52, 60, 643 P.2d 100 (1982). Any interpretation of the written terms of a contract, however, would be a question of law subject to de novo review. *Utility Maintenance Contractors, Inc. v. West American Ins. Co.*, 19 Kan. App. 2d 229, 232, 866 P.2d 1093, *rev. denied* 254 Kan. 1010 (1994).

The terms of the faxed fee policy are not at issue here. Neither party sets out any language of the fee policy for us to interpret. The district court correctly identified the issue as whether a contract existed. Our standard of appellate review requires us to decide whether the district court's finding of "no contract" is supported by substantial competent evidence and whether the findings are sufficient to support the conclusions of law. See *Tucker v. Hugoton Energy Corp.*, 253 Kan. 373, Syl. ¶ 1, 855 P.2d 929 (1993). A negative finding will not be disturbed absent an arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion, or prejudice. *Nance v. Harvey County*, 263 Kan. 542, Syl. ¶ 7, 952 P.2d 411 (1997).

We do not weigh conflicting evidence, pass on the credibility of witnesses or redetermine questions of fact. Our only concern is with evidence that supports the district court's findings, not with evidence that might have supported contrary findings. *Care Display Inc. v. Didde-Glaser, Inc.*, 225 Kan. 232, 237, 589 P.2d 599 (1979).

Hammond was the Waldinger employee who dealt with Reimer on the management recruitment contract. Hammond's deposition

testimony was presented at trial. (He had moved out of state.) In his deposition, Hammond said:

"That agreement [the terms of the "fee policy" fax] did not exist because we did not follow it. We used a totally different verbal agreement.

. . . .

". . . But again, as I say, we didn't use that agreement so, you know, [Reimer] and I had a very candid, pointed conversation about that agreement. And it was determined at that time that we were going to just set up a very simple, you know, percentage of a salary that we agreed upon, and that we also would waive, you know, warranties and such. . . .

. . . .

"Again, we're not talking about, you know, avoiding. We had discussion and negotiated, you know, equally on [Reimer's] side. In fact, it was [Reimer's] suggestion that we do these things. I just said, It's too much fee, you know. Can we do something about that? And at that time [Reimer] said, Yes, this is what we'll do, based on this, this. And I said, Good deal."

Later, Hammond was questioned by Waldinger's counsel:

"Q. Let's talk about the agreement. When you were sent this document that's dated April 25, 1996, the purported fee agreement, did you accept its terms?
"A. No, I did not. We changed the terms of the agreement.
"Q. Did you call Mr. Reimer up and say, I don't agree to this?
"A. Yes, I did. And that's how we came about our new—our new agreement.

. . . .

"Q. Ultimately you made a verbal agreement . . . with Mr. Reimer that had terms different than this document; is that correct?
"A. That's correct."

Later, on questioning by Reimer's counsel, this exchange occurred:

"Q. You renegotiated the fee on Mr. Lang?
"A. That's correct. Actually, the agreement—we renegotiated the agreement more than just the fee."

The record reflects substantial competent evidence to support the district court's findings.

The findings are sufficient to support the conclusions of law that: (1) the only agreement was verbal and (2) "there was nothing in the verbal agreement between the plaintiff and Mr. Hammond which causes the Waldinger Corporation to be liable for any referral fee for Mr. Martin."

Reimer advances a quantum meruit claim on appeal. His only mention of quantum meruit below was in his motion for reconsideration, which stated:

"Although the plaintiff's claim is based on contract, the case has equitable components as well. When Waldinger hired Martin without paying plaintiff's fee, plaintiff was not only deprived of the fee and defendant was unjustly enriched, avoiding not only the fee and the expenses associated with placing ads, interviewing a multitude of applicants, etc. Plaintiff has also been precluded from offering Mr. Martin to other potential employers who could have kept their promise and paid the fee."

The district court denied the motion.

There was no evidence presented at trial regarding the expenses Waldinger avoided, such as advertising and interviewing costs. The 15-page pretrial order stated that "[t]he parties reserve objection as to the statement of the issues, but agree that the case shall be argued within the parameters contained herein." Eighteen "issues of fact," ten "issues of law," and three "questions of evidence or procedure" were then enumerated, and none raised the theory of quantum meruit. The order concluded with a statement that the trial "shall be limited to the issues . . . listed." Under these circumstances, it was within the properly exercised discretion of the district court to deny the motion to reconsider and thus decline to entertain Reimer's quantum meruit argument.

Affirmed.