RILEY, Chief Judge.
In this diversity case, see 28 U.S.C. § 1332(a)(1), (c)(1), Robl Construction, Inc. (Robl Construction), a Kansas citizen, appeals the adverse grant of summary judgment to Andrew Homoly, a Missouri citizen, on Robl Construction’s claim that Homoly breached an agreement personally to guarantee 40% of a $431,544.02 loan[1] Robl Construction made to Homoly & Robl, L.L.C. (Company). The district court found Homoly did not personally guarantee any loan from Robl Construction. Because the record and the parties’ submissions reveal Robl Construction and Homoly genuinely dispute whether Homoly — by word and deed — authorized Robl Construction’s loan to the Company and personally guaranteed repayment in accordance with the terms of the Company’s agreements, we reverse and remand for further proceedings.
I. BACKGROUND
On October 29, 2002, Robl Construction, through its president Steve Robl, and Ho-moly formed the Company to purchase and develop residential real estate. Robl Construction and Homoly executed an operating agreement and a separate Buy-Sell, Option, and Financing Agreement (buy-sell agreement). Both agreements govern the Company’s financial affairs and define the members’ rights and duties in .accordance with Kansas law. The buy-sell agreement controls in the event of an inconsistency.
As the only members of the Company, Robl Construction held a 60% share and Homoly held a 40% share. Steve Robl was the Company’s tax matters partner, *1032 and his wife, accountant Vera Robl, assisted with the Company’s financial records. Homoly primarily worked as a project manager in the field.
In 2004, the Company began to have financial problems. From 2006 to 2011, the Company operated at a loss and needed additional capital to continue operations. Robl Construction was periodically advancing money to the Company, and Steve Robl, Vera Robl, and Homoly discussed whether the Company should make a capital call or treat the advances as a revolving loan.
As relevant to this appeal, § 6.03 of the operating agreement required the consent of both Robl Construction and Homoly before
D) The creation of any obligation or commitment of the Company, including the borrowing of funds, in excess of $10,000; [and]
I) Any act which would cause a Member, absent such Member’s written consent, to become personally liable for any debt or obligation of the CompanyL]
On July 31, 2006, Vera Robl notified Homoly by email that the Company needed “to make a capital call or increase loans on existing inventory.” She advised that Robl Construction had “put in $71,500 so if you go the route of capital call, your share to get caught up would be $47,666.” She asked Homoly to “[l]et [her] know what to do.” When Homoly asked whether the $47,666 included $34,900 Homoly previously contributed, Vera Robl explained,
No, the 71,000 is new money we’ve put in to cover all the carrying costs of the inventory. To match it, you would need to put in 47,666.... I’ve been treating the 71,000 like a loan from Robl Const, but I need to know what the plans are— will it be capital and you will match it, or will it be a loan and be repaid?
On August 2, 2006, Homoly responded,
Wow, if my portion is $82,566, does this mean we are in the hole by $206,400? ... I could put in that much money, but it would be a good sized hit for my liquidity____With that in mind, I guess I would prefer the money from Robl to be considered a loan and then you guys get repaid with interest. If Steve would rather me put in a capital call, however, I will go ahead and write the check.
Vera Robl replied she would not “make any journal entries until [Homoly] and Steve talk this over.” On appeal, Homoly — conceding he left the decision to Steve Robl’s discretion — characterizes his response as “askfing] Steve Robl, the [Company’s] tax matters and financial partner, to clarify which route the [Company] wishes to take.”
Relying in part on this email exchange, Robl Construction avers the parties agreed to treat Robl Construction’s periodic advances to the Company as a revolving loan. As Robl Construction sees it, Homoly not only requested the loan, but also agreed to be personally hable for 40% of the $431,544.02 debt pursuant to § 8 of the buy-sell agreement, under which Robl Construction and Homoly each “agree[d] to personally guarantee [their proportionate share of] any and all loans” to the Company at the request of the Company and the lender. See Kan. Stat. Ann. § 17-7688(b) (allowing members to opt out of the state’s default non-liability rule and “agree to be obligated personally for any or'all of the debts, obligations and liabilities of the limited liability company” “under an operating agreement or under another agreement”).
On March 29, 2011, Robl Construction formally demanded that Homoly repay his share of the unpaid loan. When Homoly *1033 refused, Robl Construction sued Homoly for breach of contract, seeking $172,617.61 in damages — Homoly’s share of the debt. Homoly moved for summary judgment, arguing (1). if the advances to the Company were failed capital calls, Robl Construction could seek, at most, dilution of Homoly’s interest in the Company, and (2) if the advances were a loan, Robl Construction failed to meet the conditions precedent in the parties’ agreements and to satisfy the statute of frauds with respect to Homoly’s alleged guarantee.[2] In response, Robl Construction insisted the advances were a loan and argued genuine factual disputes precluded summary judgment.
Ostensibly accepting Robl Construction’s characterization of the advances as a loan, the district court granted Homoly’s motion, “finding] the money Robl gave the Company was not a personally guaranteed loan.” Robl Construction appeals.
II. DISCUSSION
Robl Construction and Homoly agree on little, but they do agree Kansas law governs their dispute. See H & R Block Tax Servs. LLC v. Franklin, 691 F.3d 941, 943-44 (8th Cir.2012) (applying state substantive law as specified by contract because Missouri, the forum state in a diversity case, generally enforces contractual choice-of-law provisions). We review de novo the district court’s application of state law and its grant of summary judgment. See Bannister v. Bemis Co., 556 F.3d 882, 884 (8th Cir.2009). Summary judgment is required “if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(a).
A. Judgment as a Matter of Law
In granting summary judgment to Ho-moly, the district court decided “there [wa]s nothing in the record showing that Robl [Construction] requested Homoly personally guarantee any such loan as the Buy-Sell Agreement clearly contemplates.” Rejecting Robl Construction’s proposed interpretation of the 2006 email exchange between Homoly and Vera Robl, the district court found Homoly’s email “may show that Homoly wanted Robl [Construction] to loan the Company money, but it does not indicate that Robl [Construction] requested for Homoly to personally guarantee the loan. Rather, the email communication shows a failed capital call attempt, and Homoly’s preference — not request — that Robl loan the money to the Company.”
Robl Construction contends this was error because the district court “premised its holding exclusively on the email exchange and failed to consider other evidence that Homoly” authorized and “personally guarantee^] the loan.” Robl Construction further asserts “[t]he District Court erroneously stepped into the role of fact finder and failed to resolve all facts and inferences in” Robl Construction’s favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (“[A]t the summary judgment stage the judge’s function is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.”); Henrickson v. Drotts, 219 Kan. 435, *1034 548 P.2d 465, 468 (1976) (“A court should be cautious in granting a motion for summary judgment when resolution of the dis-positive issue necessitates a determination of the state of mind of one or both of the parties.”). Robl Construction’s points are well taken.
B. Kansas Contract Law
Under Kansas law, “[t]he question whether a binding contract was entered into depends on the intention of the parties and is a question of fact.” Reimer v. Waldinger Corp., 265 Kan. 212, 959 P.2d 914, 916 (1998); see also Hays v. Underwood, 196 Kan. 265, 411 P.2d 717, 720-21 (1966) (explaining that conflicting evidence and competing inferences as to the existence and terms of a contract present fact questions). “[W]hether a party’s duty under a contract was based on a condition precedent is” also a fact question, Cravotta v. Deggingers’ Foundry, Inc., 42 Kan. App.2d 700, 215 P.3d 636, 642 (2009), as is the question of breach, see Wichita Clinic, P.A. v. Louis, 39 Kan.App.2d 848, 185 P.3d 946, 959 (2008). “[I]nterpretation of the written terms of a contract, however, [is] a question of law.” Reimer, 959 P.2d at 916.
A contract may be oral, written, or a mixture of both. See, e.g., Chilson v. Capital Bank of Miami, 237 Kan. 442, 701 P.2d 903, 907 (1985). “Whether an ambiguity exists in a written instrument is a question of law for the court.” Hollenbeck v. Household Bank, 250 Kan. 747, 829 P.2d 903, 906 (1992). “[W]here ambiguity or uncertainty is involved, the parties’ intent may be determined from all the language used in the contract, the circumstances existing when the agreement was made, the object sought to be obtained, and other circumstances, if any, which tend to clarify the intention of the parties.” Id. “The terms of an oral contract and the consent of the parties may be proven by the parties’ acts and by the attending circumstances, as well as by the words that the parties employed.” Unified Sch. Dist. No. U6, Independence, Kan. v. Sandoval, 295 Kan. 278, 286 P.3d 542, 546 (2012).
C. Genuine Disputes of Material Fact
1. Consent and Personal Liability
Robl Construction credibly contends Homoly’s words and deeds under the attending circumstances — considered in the light most favorable to Robl Construction — would enable a reasonable jury to find Homoly not only consented to the Robl Construction loan, but ajso agreed to be personally liable for 40% of the debt. In addition to the 2006 email indicating Homoly “would prefer the money from Robl [Construction] be considered a loan” to be repaid with interest, Robl Construction proposes the following evidence supports its breach-of-contract claim:
• Sworn testimony from Steve Robl indicating (1) Homoly requested the loan, (2) Steve requested, on behalf of Robl Construction and the Company, that Homoly personally guarantee the loan, (3) Homoly agreed to do so as required'by the buy-sell agreement, and (4) Steve and Homoly frequently discussed the loan and the amount Homoly owed;
• Sworn testimony from Vera Robl that Homoly requested Robl Construction make a loan to cover the Company’s shortages, rather than a capital call, and “constantly] communicat[ed]” with Robl Construction about the loan;
• Sworn testimony from Vera Robl and bookkeeper Sarah Lauffer indicating Homoly agreed to Robl Construction charging interest on the loan, and Ho-moly thought the interest rate was fair;
*1035 • Evidence the Company treated the advances from Robl Construction as a loan on its financial statements and attributed 40% of the debt to Homoly as it did with other outstanding loans;
• Evidence that for more than four years Homoly received those financial statements indicating he was liable for 40% of the loan at issue yet never objected or denied liability;
• Sworn testimony from Lauffer that upon receiving the financial statements, Homoly expressed “panic” about his growing losses; and
• Evidence that Homoly benefitted from the loan in that he avoided a capital call and maintained a 40% interest in the Company, and the loan “allowed him to offset the Company’s losses against ordinary income on his individual tax returns.”[3]
Predictably unswayed by Robl Construction’s evidence, Homoly urges a different interpretation. Having disputed most of Robl Construction’s “Additional Material Facts,” Homoly maintains “nothing in the materials offered” shows the advances were a loan or that the conditions of the parties’ agreements were met, including Homoly’s consent to the loan and his assent to personal liability for the Company’s debt.
Homoly, in his appellate brief, claims his intent in agreeing and consenting to personal liability in the buy-sell agreement was limited to a specific loan from a bank. Homoly also disputes the meaning and import of the pivotal 2006 email exchange and challenges Robl Construction’s understanding of the parties’ frequent communications about the loan and Homoly’s personal liability for the debt. For example, in response to Vera Robl’s testimony that Homoly’s periodic requests for Robl Construction to “cover” Company shortages constituted “a loan in every way,” Homoly contends his request to “cover” is “at best, an oral request for money and not a request for a loan” — arguably a distinction without a difference.
But questions of intent and whether the parties’ statements and actions satisfied the conditions precedent in their agreements are precisely the type of factual disputes a jury must decide. See, e.g., First Nat’l Bank of Hutchinson v. Kaiser, 222 Kan. 274, 564 P.2d 493, 496-97 (1977); M West, Inc. v. Oak Park Mall, L.L.C., 44 Kan.App.2d 35, 234 P.3d 833, 845-46 (2010); Cherryvale Grain Co. v. First State Bank of Edna, 25 Kan.App.2d 825, 971 P.2d 1204, 1209 (1999).
Further, under Kansas law, Homoly cannot avoid contractual liability “merely by claiming the conditions [precedent] have not been met.” Barbara Oil Co. v. Patrick Petroleum Co., 1 Kan. App.2d 437, 566 P.2d 389, 393 (1977). A party hoping to avoid liability “must affirmatively show that (1) the condition precedent actually failed and (2) because of such failure, the contract will not be performed.” Id. Whether Homoly refused to perform based on “a genuine and good faith claim that a condition precedent failed is a question for the jury.” Id.; accord JDN Dev. Co. v. Terra Venture, Inc., 265 F.Supp.2d 1239, 1250-51 (D.Kan.2003) (denying summary judgment where a party flatly asserted conditions precedent were not met).
*1036 Without addressing Homoly’s burden and the jury’s role in deciding questions of failed conditions under Barbara Oil Co., 566 P.2d at 393, the dissent concludes we should not allow a jury to resolve this contract dispute because, in the dissent’s view, Robl Construction waived any argument that Robl Construction “fulfilled § 6.03(D) and (I) of the operating agreement by loaning money to the Company with Homoly’s prior consent.” Post at 1041. Leaving aside the incongruity of Homoly agreeing to guarantee the loan personally without consenting to the loan itself, the dissent’s conclusion that Robl Construction “essentially ignores” § 6.03(D) and (I) is at odds with the record. Post at 1040-41.
Rather than ignore the conditions precedent in § 6.03(D) and (I), Robl Construction, challenging the district court’s determination that Homoly expressed a “preference — not request” for a loan, explicitly and repeatedly asserted in its appellate brief that the conditions were met. The dissent acknowledges as much, noting Robl Construction specifically asserted “Homoly consented to” the loan. Post at 1042 n. 6. Yet the dissent summarily dismisses that assertion because it “addresse[dj” a different argument. Id. The dissent’s belief that this statement is the “only place in which Robl Construction even hints to argue that it fulfilled § 6.03(D),” id., conflicts with the record and the dissent’s own analysis. In framing Robl Construction’s arguments, the dissent admits Robl Construction asserted the loan met the requirements of the parties’ agreements — which would unequivocally include § 6.03(D) and (I)-but concludes such a “general denial” is inadequate to preserve the issue. Post at 1040.
Drawing a fine distinction between Ho-moly authorizing the loan and requesting it, the dissent concedes Robl Construction stated Homoly “requested” the loan and presumes Robl Construction was “arguing that such a request constituted the necessary ‘prior consent of a Super-Majority-in-Interest’ to fulfill § 6.03(D).” Post at 1040. Yet this presumption apparently is not enough to prevent waiver. In claiming “Robl Construction waive[d]” its arguments, post at 1041, the dissent overlooks, among other things, Robl Construction’s assertions that (1) “Robl Construction presented direct and circumstantial evidence ... Homoly consented to the Robl Construction loans,” and (2) the 2006 email exchange indicated “Homoly requested] Robl Construction make a loan and Robl Construction ‘would get repaid.[’]” (Emphasis added). We are satisfied Robl Construction did not waive its argument that Homoly consented to the loan as required by § 6.03(D).
The same is true for § 6.03(1). Despite claiming Robl Construction “essentially ignore[d]” § 6.03(1), the dissent later explains Robl Construction did not ignore § 6.03(1) at all but instead “argue[d] § 8 of the buy-sell agreement acts as Homoly’s written consent,” which satisfies § 6.03(1). Post at 1040-41, 42. Robl Construction adequately preserved this issue as well.
2. Additional Writing and Timing Requirements
We also question some of Homoly’s proposed interpretations of the writing and timing requirements in the parties’ agreements. For example, Homoly does not provide any support for his assertions that § 6.03(D) of the operating agreement requires “signed written consent” for loans in excess of $10,000, or that the parties cannot designate the money from Robl Construction as a loan or request a guarantee after the receipt of funds. (Emphasis added). In Homoly’s view, the *1037 Company had to obtain his consent before receiving any money from Robl Construction, even though he and Robl Construction had not yet decided whether the Company would treat the initial advances as a capital contribution or a loan.
As we read it, § 6.03(D) prohibits only “[t]he creation of any obligation or commitment of the Company, including the borrowing of funds, in excess of $10,000” without super-majority consent. (Emphasis added). At the least, the language is open to an interpretation under which the parties intended to require super-majority consent only before the Company was bound, and an undesignated advancement of funds does not necessarily impose any obligation on the Company. A reasonable jury could find there was no such binding obligation or commitment from the Company unless and until the parties decided to treat the advances as a loan. At that point, the jury could reasonably find the requisite consent.
Even if the timing of the advances — as opposed to the obligation to repay — is unambiguously relevant, Homoly’s analysis is incomplete. Most of the advances occurred after the 2006 email exchange and after disputed communications about the alleged loan. Homoly argues the evidence does not establish the Company “complied with the Super-Majority-in-Interest requirements necessary to even allow such loan(s) to be authorized prior to each being made.” But if the parties agreed to a single revolving loan, as Robl Construction contends, with support from the email, we would not expect a separate consent before each advance.
To the extent the parties intended a series of smaller loans, record testimony from Vera Robl, Steve Robl, and Homoly describing frequent discussions about such loans plausibly suggests multiple loan requests from Homoly. Even absent direct evidence of consent for each advance, some of Robl Construction’s alleged advances do not run afoul of § 6.03(D) because they do not exceed $10,000. Homoly does not account for these obvious inconsistencies and conceptual gaps.
3. Ratification
The facts also suggest Homoly may have ratified at least part of the loan to the Company by knowingly accepting the benefit. See Cherryvale Grain, 971 P.2d at 1208 (“ ‘The acceptance and retention of the proceeds of a loan or of the benefits thereof, although made without authority, amount to an implied ratification of the loan.’ ” (quoting Allison v. Borer, 131 Kan. 699, 293 P. 769, 772 (1930))); see also Sunflower Bank, NA. v. Airport Red Coach Inn of Wichita, L.L.C., 175 P.3d 883, 2008 WL 360641, at *4 (Kan.Ct.App. Feb. 8, 2008) (per curiam) (unpublished table decision) (evaluating whether the members of a limited liability company impliedly ratified a loan that was not authorized by the operating agreement based on the receipt of loan proceeds and other evidence of the members’ intent).
Homoly testified he knew the Company “was getting a loan from Robl Construction, and they just kept getting more,” and he understood that the money allowed the Company to operate without selling assets or making a capital call. Yet Homoly never told his business partner to stop loaning money to- the Company. Robl Construction has adduced sufficient evidence of implied consent by ratification to create genuine disputes of material fact at least with respect to part of the loan.
4. Separate Guarantee
Nor can we accept Homoly’s suggestion that written personal guarantees he and Robl Construction once executed at the request of a bank in connection with a *1038 construction loan indicate § 8 of the buy-sell agreement requires a separate “written consensual personal guarantee” before Homoly became personally liable. Neither the contract language nor the record supports Homoly’s proposed separate guarantee requirement.
First, pursuant to § 8, Homoly expressly and unambiguously “agree[d] to personally guarantee any and all loans by any such lender to Company” “[i]f requested by the Company and any lender.” (Emphasis added). See Stauth v. Brown, 241 Kan. 1, 734 P.2d 1063, 1069 (1987). Section 8 says nothing about a separate written guarantee. If Robl Construction and Homoly truly intended to require a separate guarantee as Homoly suggests, they could have easily written that requirement into § 8, just as they expressly required a promissory note in § 7. They did not. “ ‘Words cannot be read into the agreement which impart an intent wholly unexpressed when it was executed.’ ” Mears v. Hartford Fire Ins. Co., 8 Kan. App.2d 760, 667 P.2d 902, 905 (1983) (quoting In re Estate of Johnson, 202 Kan. 684, 452 P.2d 286, 291 (1969)). “[T]he more logical conclusion is that the contract imposes no such obligation.” Boos v. Nat’l Fed’n of State High Sch. Assocs., 20 Kan. App.2d 517, 889 P.2d 797, 802 (1995).
Second, assuming we found § 8 ambiguous as to the parties’ intent regarding a separate guarantee, Homoly is still unable to establish he is entitled to summary judgment as a matter of law. “[I]f the language of a contract is ambiguous and the intent of the parties cannot be ascertained from undisputed extrinsic or parol evidence, summary ... judgment is inappropriate.” Waste Connections of Kan., Inc. v. Ritchie Corp., 296 Kan. 943, 298 P.3d 250, 265 (2013) (emphasis added); see also Nungesser v. Bryant, 283 Kan. 550, 153 P.3d 1277, 1288 (2007) (“When the evidence pertaining to the existence of a contract or the content of its terms is conflicting or permits more than one inference, a question of fact is presented.”); First Nat’l Bank, 564 P.2d at 496 (“Whether the guaranty was limited by a concurrent agreement of the parties ... was ... an issue of fact which could not be resolved as a matter of law.”).
Finally, even if we could consider extrinsic evidence, see Butts v. Lawrence, 22 Kan.App.2d 468, 919 P.2d 363, 367 (1996) (explaining that, absent ambiguity, it is “error to consider ... extrinsic evidence of the parties’ intent”), and resolve the alleged ambiguity in § 8, Homoly fails to adduce any competent evidence that the parties intended to include an unexpressed separate guarantee requirement in § 8. The fact the members once separately documented personal guarantees at the request of a third-party lender does not indubitably and forever establish the members’ intent to require a separate guarantee for every loan. Indeed, the record is completely devoid of any evidence regarding the members’ motive for executing the written guarantees on which Homoly relies — depriving those guarantees of evidentiary value. See, e.g., Canyon Creek Dev., LLC v. Fox, 46 Kan. App.2d 370, 263 P.3d 799, 801 (2011) (recognizing courts must “view the evidence in the light more favoring the non-moving party” and refusing to “speculate about the existence, motivating influence, or possible consequence of any [personal] guaranties” because “there [we]re no facts whatsoever on th[e] issue” in the record).
Homoly has failed to show he is entitled to judgment as a matter of law under the parties’ agreements.
5. Statute of Frauds
Although the district court did not reach this issue, Homoly argues Robl Construe *1039 tion’s failure to satisfy the statute of frauds with respect to Homoly’s purported guarantee provides an alternative basis to affirm summary judgment. See Kan. Stat. Ann. § 33-106 (“No action shall be brought whereby to charge a party upon any special promise to answer for the debt ... of another person ... unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith.”). We disagree.
Robl Construction contends Homoly’s personal guarantee falls outside the scope of the statute of frauds because Homoly’s main purpose was not to answer for the Company’s debt, but to avoid a capital call that would have been a “good sized hit for [his] liquidity.” Under Kansas law, when
the main purpose and object of the promisor is not to answer for another, but to subserve some purpose of his own, his promise is not within the statute [of frauds], although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing the liability of another.
Allen v. Turner, 152 Kan. 590, 106 P.2d 715, 719 (1940) (quotation omitted); accord Davis v. Patrick, 141 U.S. 479, 488, 12 S.Ct. 58, 35 L.Ed. 826 (1891) (“[C]ases sometimes arise in which, though a third party is the original obligor, the primary debtor, the promisor has a personal, immediate, and pecuniary interest in the transaction, and is therefore himself a party to be benefited by the performance of the promisee. In such cases the reason which underlies and which prompted this statutory provision fails, and the courts will give effect to the promise.”).
The Kansas Supreme Court has “held that whether such a promise was original or collateral [i]s ordinarily one of fact” to be determined from the surrounding circumstances. Allen, 106 P.2d at 719; accord Owensboro Wagon Co. v. D.A Wilson & Co., 79 Kan. 633, 101 P. 4, 6 (1909). That question of intent precludes summary judgment on this issue.
III. CONCLUSION
Robl Construction and Homoly have dramatically different views of the evidence. At this stage, the only question we must answer is whether “the evidence is such that a reasonable jury could return a verdict for” Robl Construction on its breach of contract claim “or whether it is so one-sided that [Homoly] must prevail as a matter of law.” Anderson, 477 U.S. at 248, 252, 106 S.Ct. 2505 (emphasis added). After careful review, we conclude the evidence is not so one-sided as to justify taking this case from the jury.
When viewed in the light most favorable to Robl Construction, the record “evidence is such that a reasonable jury could,” id. at 248, 106 S.Ct. 2505, find Homoly authorized and personally guaranteed at least part of the loan in accordance with the parties’ agreements. This is not to say the jury would have to believe Robl Construction’s account, but a reasonable jury could. At trial, Homoly may challenge Robl Construction’s witnesses and its interpretation of the evidence; however, at this point, Homoly has fallen short of proving no genuine dispute of material fact exists on this record and that Homoly is entitled to summary judgment as a matter of law. We reverse the district court’s judgment and remand for further proceedings.

. The parties vaiyingly refer to a revolving loan with multiple advances and multiple loans. Deferring to what we understand is Robl Construction's preferred characterization, we use the singular. See Young v. Allstate Ins. Co., 685 F.3d 782, 783, 784 (8th Cir.2012) (explaining at summary judgment, we must “view[ ] the evidence and draw[ ] all reasonable inferences in the light most favorable to [Robl Construction], the non-moving party”).

. Though he equivocates some, for purposes of appeal Homoly concedes the money was a loan, stating "[t]he District Court recognized that Robl Construction selected to pursue its claims as only a loan and not as a capital contribution” and ”[n]o material fact dispute exists concerning whether or not the monies were loans or capital contributions.” We thus do not consider that issue.

. Homoly’s claim that tax amendments he filed in 2011 "resolved any claim as to alleged tax benefits” and moot Robl Construction’s argument that he received a benefit from the loan is without merit. That Homoly amended his taxes after denying liability for the loan does not deprive his prior actions of evidentiary value at trial. See Fed.R.Evid. 401.