**Catherine M. SMITH, Plaintiff,**

v.

**MCI TELECOMMUNICATIONS CORPORATION, Defendant.**

Civ. A. No. 87–2110–0.

United States District Court, D. Kansas.

Dec. 5, 1990.

---

Robert P. Numrich, Martha Madden Weast, Evans & Dixon, Steven G. Piland, William G. Beck, Field, Gentry, Benjamin & Robertson, P.C., Kansas City, Mo., for plaintiff.

Roger D. Stanton, Mark D. Hinderks, Stinson, Mag & Fizzell, Overland Park, Kan., Robert L. Driscoll, Christopher F. Pickering, Stinson, Mag & Fizzell, Kansas City, Mo., Marianne Geeker, MCI Telecommunications, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter is before the court on (1) defendant's motion to dismiss plaintiff's corrected third amended complaint and (2) plaintiff's motion for partial summary judgment on count 3 of plaintiff's corrected third amended complaint. Having carefully considered the parties' briefs and arguments, the court is prepared to rule.

### Procedural History

On June 18, 1987, plaintiff, Catherine Smith (Smith) filed her first amended complaint alleging her former employer, MCI Communications Corporation (MCI), defrauded its sales persons by failing to pay them proper commissions pursuant to written compensation plans. This complaint included causes of action for (1) violations of the Racketeer Influenced and Corrupt Organizations Act (RICO); (2) common law

fraud as the basis for the RICO claim; (3) breach of contract based on defendant's failure to pay salespersons' commissions; (4) common law fraud based on MCI's employment contracts; and (5) a breach of contract claim based on employment contracts. Subsequently, the court granted Smith's motion to certify a class as to counts 1, 2, 3, and 5. On June 7, 1989, after dismissing counts 1 and 4, the court granted plaintiff leave to file a second amended complaint reasserting the claims included in counts 3 and 5 of her first amended complaint under the court's diversity jurisdiction, and also granted plaintiff's motion to recertify a class as to those claims. On April 9, 1990, the court granted plaintiff leave to file a third amended complaint, adding in the fraud count the allegation that:

> As part of its scheme, defendant, through a standard "sales pitch" consisting of videotaped written and oral statements, represented to all members of the plaintiff class that average sales persons would receive commissions equal to or exceeding their $13,000 annual salary, and above average sales persons would receive more than that, even though defendant planned not to pay such commissions.

The court further granted plaintiff's motion to certify the class as to counts 1, 2, and 3 of the third amended complaint. On April 18, 1990, Smith filed her corrected third amended complaint alleging fraud (count 1), breach of contract (count 2), and violations of the Kansas Wage Payment Act (count 3), K.S.A. 44–313 *et seq.*

### Motion to Dismiss

MCI moves to dismiss count 1 of plaintiff's third amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted. Generally, the court may not dismiss a cause of action for failure to state a claim, unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him to relief. *Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976); *Mangels v. Pena*, 789 F.2d 836, 837 (10th Cir.1986). "All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984). The court must view all reasonable inferences in favor of the plaintiff and the pleadings must be liberally construed. *Id.* The issue in reviewing the sufficiency of a complaint is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

■ MCI asserts that plaintiff's fraud claim should be dismissed since, under Kansas law, in actions for breach of contract, punitive damages may not be recovered, even if the breach is intentional, unless the plaintiff pleads and proves an independent tortious act causing additional injury. *See Cornwell v. Jespersen*, 238 Kan. 110, 708 P.2d 515, 524 (1985). As stated by the Tenth Circuit:

> Th[e] exception to the rule of unavailability of punitive damages in breach of contract actions is recognized when some independent tort or wrong results in additional injury which justifies the assessment of punitive damages by way of punishment of the wrongdoer. In such a case, the proof of the independent tort must indicate the presence of malice, fraud or wanton disregard of the rights of others.

*Osgood v. State Farm Mut. Auto. Ins. Co.*, 848 F.2d 141, 143 (10th Cir.1988), *quoting Guarantee Abstract & Title Co. v. Interstate Fire & Cas. Co.*, 232 Kan. 76, 78–79, 652 P.2d 665, 667 (1982).

Plaintiff counters that the fraud claim is valid, as a tortious act independent from the breach of contract, since it is based upon separate facts which, if proved, would establish fraudulent inducement to enter into the contract. We agree that under Kansas law, "[w]hen alleged fraud relates to promises or statements concerning future events, the gravamen of such a claim is not the breach of the agreement to per-

form, but the fraudulent representation concerning a present, existing intention to perform when such intention is in fact nonexistent." *See K–B Trucking Co. v. Riss Intern. Corp.*, 763 F.2d 1148, 1156 (10th Cir.1985), *quoting Modern Air Conditioning Inc. v. Cinderella Homes, Inc.*, 226 Kan. 70, 596 P.2d 816, 824 (1979). In order to succeed on this claim, plaintiff would be required to prove that MCI never intended to perform upon its promise to pay specific commissions and salary; that the promise was made with the intent to deceive and to induce plaintiff into entering into a contract of employment; that plaintiff reasonably relied upon the promises; and that plaintiff sustained damages thereby. *See Mackey v. Burke*, 751 F.2d 322, 328 (10th Cir.1984). These elements are clearly separate from the elements required to prove breach of contract in this case, and we concur with plaintiff that the alleged fraud qualifies as an independent tort.

 MCI argues, however, that even if the alleged fraud in the inducement can be considered an independent tort, Smith has failed to plead damages additional to the damages caused by the alleged breach of contract. MCI's argument is based, in part, on the similarity between the prayers for relief in both the fraud and contract counts. The court notes, however, that both prayers seek general relief and not specific dollar amounts. As stated previously, in order to grant MCI's motion to dismiss, it must appear beyond a doubt that Smith can prove no set of facts entitling her to relief. Further, all reasonable inferences must be viewed in Smith's favor.

Applying these principles to facts of this case, we agree with Smith that possible damages for fraud could include amounts above and beyond those claimed under the breach of contract claim. For example, under the facts alleged in the fraud claim, Smith could be entitled to recover the difference between what was promised (that average sales persons would receive com-

missions equal to or exceeding their $13,000 annual salary, and above average persons would receive more than that), and what she actually received. This amount of damages could be separate and apart from the breach of contract damages, which relate solely to amounts which Smith claims she earned pursuant to the written Plan Documents.[1] Under these facts, the court finds it would be premature to foreclose proof of differentiated damages at this time. Accordingly, because the court is unable to find that Smith can prove no facts entitling her to additional damages under the fraud claim, defendant's motion is denied.

*Motion for Summary Judgment*

Plaintiff moves the court for summary judgment on count 3 of the corrected third amended complaint, which alleges violations of the Kansas Wage Payment Act, K.S.A. 44–313 *et seq.* Defendant argues that the existence of genuine issues of material fact precludes summary judgment on this count. We disagree.

When considering a motion for summary judgment we must examine all evidence in the light most favorable to the opposing party. *McKenzie v. Mercy Hospital of Independence, Kansas*, 854 F.2d 365, 367 (10th Cir.1988). If the moving party bears the burden of proof at trial, he must show, through pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *See* Fed.R. Civ.P. 56(c). If the moving party does not bear the burden of proof, he must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). This burden is met when the moving party identifies those portions of the record demonstrating an absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2552–53.

---

1. The fact that Smith claims additional damages under the fraud count distinguishes this case from *Osgood v. State Farm Mut. Auto. Ins. Co.*, *supra*, cited by defendant, in which the plaintiff conceded that both the fraud and breach of contract claims sought the exact same measure of compensatory damages.

If the moving party meets his requirement, the burden shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The trial judge then determines whether a trial is needed— "whether, in other words, there are any genuine issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511.

It is undisputed that under the terms of the various commission plans at issue in this case, commissions became earned on *sales* of MCI service, when there existed a qualifying sale on a qualifying account. The amount of commissions earned for the sales was based on a percentage of the long-distance usage billed to the customer. For instance, the January 1, 1986, Commission Plan provided for earning commissions based on the sale of Commercial Dial–Up service as follows:

> For qualifying *sales* of Commercial Dial–Up Service, the Commercial Sales Representative will earn a commission of 15% of the first full month of Dial–Up Service billing for all Commercial Dial–Up Service Account sales on and after January 1, 1986. Commissions will be paid *based upon* the first partial month's Dial–Up billing. Incremental commissions will be paid *based upon* the first full month's usage in excess of the first partial month's usage. To qualify, the Commercial Dial–Up Account must have usage of $15 per month or higher. If usage is less than $15 on the first full month, commissions paid for the partial month will not be charged back. (Emphasis added).

The various Plan Documents also included the following termination provision:

> A participant under this plan whose employment is terminated with MCI, for

any reason whatsoever, will earn sales and referral commissions for qualifying accounts whose billing period ended on or before the effective date of the termination. *No commissions will be earned for billing periods that end after the date of termination.* (Emphasis added.)

Plaintiff argues that this provision causes terminated employees to forfeit usage commissions for billing periods with billing dates subsequent to their termination in violation of K.S.A. 44–315(a) which provides:

> Whenever an employer discharges an employee or whenever an employee quits or resigns, the employer shall pay the employee's earned wages not later than the next regular payday upon which he or she would have been paid if still employed.[2]

In construing the above statute, the Kansas Supreme Court has held that "[i]n determining the rights which occur under an employment contract, the terms of the contract control so long as they are not unreasonable or illegal." *Weinzirl v. Wells Group, Inc.,* 234 Kan. 1016, 1019, 677 P.2d 1004, 1008 (1984). Further, although Kansas law permits an employer to impose a condition precedent on its obligation to pay an employee wages, once an employee's right to earned wages becomes absolute, a condition subsequent cannot impose a forfeiture. *Weir v. Anaconda Co.,* 773 F.2d 1073, 1084 (10th Cir.1985) (applying Kansas law) (citations omitted). In determining whether a wage is earned, a court's task is "one of deciding whether the documents drafted by the employer place a condition precedent on entitlement to the [wage] or whether they attempt to impose a forfeiture." *Id., quoting Morton Buildings, Inc. v. Department of Human Resources,* 10 Kan.App.2d 197, 695 P.2d 450, 453 (1985).[3]

MCI asserts that two valid conditions precedent preclude plaintiff from en-

---

2. The term "wages" is defined by the Act as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis less authorized withholding and deductions." K.S.A. 44–313(c).

3. Under Kansas law, a condition precedent has been defined as:

> something that is agreed must happen or be performed before a right can occur to enforce the main contract. It is one without the performance of which the contract entered into between the parties cannot be enforced. A

titlement to the claimed commissions. First, MCI contends that commissions did not achieve the status of "earned wages" until (1) the MCI customer had used the service for a billing period and the amount of customer usage was determined and billed and (2) the customer's usage of the service was sufficient to satisfy as a "qualifying sale." MCI, however, can point to no provision in the contract which defines commissions in this manner. Instead, the contract expressly provides that commissions are earned upon *sales* and that the amount of commissions is to be determined *based upon* the first month's billings.

More significantly, the court finds MCI's interpretation of the contract unrealistic in light of the realities of MCI's commercial telemarketing business. It is undisputed that the average period of a class member's employment was approximately six to eight months. It is further undisputed that telemarketers sold service several months before MCI could begin providing service in a particular area and that an additional period of time would necessarily elapse before the customer would be billed and usage could be determined. Given these facts, MCI's interpretation of the contract would result in consistent non-payment of commissions for sales made, an outcome clearly violative of the spirit of the Wage Payment Act. The court therefore finds that MCI employees became vested with the right to receive undetermined scheduled commissions, as earned wages, at the time they sold MCI service. The fact that the various scheduled payments could not be calculated until several months after service was sold does not impair this vested right.[4]

Second, MCI argues that the employment contracts mandated continued employment as a valid condition precedent to the receipt of commissions, due to the requirement that employees continue to service their accounts post sale. Although MCI concedes that the express terms of the employment contract control the determination of the rights of the parties, again MCI can point to nothing in the contract which supports this argument.[5]

Instead, MCI offers the deposition testimony of various MCI employees who state that the commercial telemarketers job included post-sale activities such as follow-up calls and responding to customer problems. The court rejects this testimony as an impermissible attempt by MCI to vary the terms of the express written contract by parol evidence. Here, where there is no claim that the employment contract is ambiguous, extrinsic evidence is inadmissible and the written agreement alone determines the rights and duties of the parties. *See Hall v. Mullen*, 234 Kan. 1031, 1037, 678 P.2d 169, 174 (1984); *NEA–Goodland v. U.S.D. No. 352*, 13 Kan.App.2d 558, 562, 775 P.2d 675, 679 (1989). Further, even if the court were to find that MCI had established that employees had a duty to perform post-sale activities on their accounts, there is nothing in the testimony which ties these activities to the receipt of commissions.

In sum, the court rejects MCI's argument that the employment contract imposes any valid condition precedent on the employees' receipt of commissions. Since, under the express terms of the contract, the right to commissions became absolute at the time MCI service was sold, the court

condition precedent requires the performance of some act or happening of some event after the terms of the contract, including the condition precedent, have been agreed on before the contract shall take effect. *Weinzirl, supra,* 677 P.2d at 1008.

4. These calculations would, of course, include deductions for advances paid to employees by MCI prior to the end of the billing period.

5. Notably, in all cases cited by MCI, the employment contract expressly conditioned the payment of wages on certain events, *Weinzirl v. Wells Group, Inc., supra* (provision forfeiting commissions on maintenance contract pay-

ments received after termination); *Dangerfield v. Montgomery Ward Co., Inc.,* 236 Kan. 594, 694 P.2d 439 (1985) (undisputed that the oral employment agreement provided for a guaranteed minimum wage plus deductions from future weeks earnings when the employee's earned commissions were less than the guaranty); *Holder v. Kansas Steel Built, Inc.* 224 Kan. 406, 582 P.2d 244 (1978) (no commissions earned until sale made, construction project completed, gross profit exceeded a specified amount and customer paid for the job). Here, since the employment contract contains no express conditions, the court finds these cases inapposite.

finds any further conditions to be conditions subsequent which impose a forfeiture of earned wages in violation of K.S.A. 44–315(a). Accordingly, because the court has determined there are no genuine factual disputes concerning plaintiff's entitlement to commissions under the contract, the court grants plaintiff's motion for partial summary judgment on count 3 of the complaint.[6] The court orders MCI to account to all count 3 class members for all commissions which were unpaid due to the application of the termination provision plus interest.

IT IS THEREFORE ORDERED that defendant's motion to dismiss (Doc. # 369) is denied.

IT IS FURTHER ORDERED that plaintiff's motion for partial summary judgment (Doc. # 393) on count 3 of the corrected third summary judgment amended complaint is granted.

---

**6.** As plaintiff has indicated, the issue of plaintiff's recovery of liquidated damages pursuant to K.S.A. 44–315(b) for any willful violation of K.S.A. 44–315(a) remains and will be submitted to the jury.