**JDN DEVELOPMENT COMPANY, INC., Plaintiff,**

v.

**TERRA VENTURE, INC., Defendant.**

**No. CIV.A. 01–2605–CM.**

United States District Court, D. Kansas.

June 3, 2003.

Leland H. Corley, Robert W. Tormohlen, Lewis, Rice & Fingersh, L.C., Kansas City, MO, William H. Meyer, Leawood, KS, for Plaintiff.

Michael W. Lerner, Law Office of Mick Lerner, P.A., Overland Park, KS, for Defendant.

### MEMORANDUM AND ORDER

MURGUIA, District Judge.

Pending before the court are plaintiff's Motion for Summary Judgment (Doc. 57) and defendant's Motion for Summary Judgment (Doc. 61).

As set forth below, the court grants in part and denies in part plaintiff's Motion for Summary Judgment. The court denies defendant's Motion for Summary Judgment.

## I. Background [1]

### A. The Parties

Plaintiff JDN Development Company, Inc., is a publicly traded Delaware corporation that operates as a real estate investment trust, with its principal place of business in Atlanta, Georgia. Plaintiff's primary business is to acquire, develop, and own strip mall shopping centers. Defendant Terra Venture, Inc. is a privately held Kansas corporation. Defendant is engaged in the business of developing, leasing, and brokering commercial real estate. In its course of business, defendant does not acquire or own the property to be developed, but acts as a broker or has a financing partner or co-developer acquire the property. Gray Turner owns 65% of defendant's stock, John Sweeney owns 30%, and Jack Isley owns 5%.

### B. Written Contracts

#### 1. Sale Agreement Between Defendant and Ranch Mart

On July 27, 1999, defendant entered into a contract (hereinafter "Sale Agreement") with Ranch Mart, Inc. (hereinafter "Ranch Mart"), in which defendant agreed to purchase approximately 65 acres (hereinafter "the property") at the southeast corner of 135th Street and Antioch in Overland Park, Kansas. The Sale Agreement provided that defendant would deposit $50,000 in earnest money with Security Land Title Company as escrow agent (hereinafter "Escrow Agent"), that closing would take place within 120 days, and that defendant could extend the closing for an additional 90 days by depositing an additional $100,000 in earnest money with the Escrow Agent.

---

**1.** All facts are uncontroverted or viewed in the light most favorable to non-moving party pursuant to Federal Rule of Civil Procedure 56.

The Sale Agreement also provided that the obligations of defendant were subject to conditions including (A) that Ranch Mart's representations and warranties would be true and correct on the date of Closing and that Ranch Mart would perform its obligations prior to closing; (B) that Ranch Mart would convey marketable title at closing; and (C) that defendant would obtain, "at [defendant]'s expense, all requisite zoning and plan approvals for its intended development of the Land, together with binding commitments from the potential users of such Land." (Sale Agreement at ¶ 8). The Sale Agreement further stated that:

> [I]n the event the conditions set forth above are not all satisfied, [defendant] shall notify [Ranch Mart] of the failure of such condition precedent to be satisfied, in which event [defendant] shall have the option of terminating this Agreement, whereupon the Earnest Money shall be returned to [defendant] and this Agreement deemed null and void, provided provisions to the contrary notwithstanding, in the event [defendant] exercises its option to extend the Closing for an additional one hundred twenty (120) days, as contemplated at paragraph 3, [defendant] may terminate this Agreement and receive a refund of the Earnest Money if and only if the conditions precedent set forth at subparagraphs A and B above are not fulfilled or satisfied. Notwithstanding anything contained herein to the contrary, [defendant] at any time or times on or before Closing, in order to close, at its sole election, may waive any of the conditions to its obligations hereunder.

(*Id.*). The Sale Agreement did not contain a provision addressing the procedure for termination.

In December 1999, Ranch Mart and defendant entered into an Amendment to Sale Agreement which extended the closing date to May 1, 2000, and provided, in part, that defendant would make an additional deposit of $100,000 in earnest money. The December Amendment also stated that:

> [I]n the event the conditions precedent set forth at paragraph 8 of the Sale Agreement are not fulfilled to [defendant]'s satisfaction or waived by [defendant] on or before the Closing Date ... both the initial earnest money deposit of $50,000 and the additional earnest money deposit of $100,000 will be returned to [defendant] upon the earlier of the Closing Date or [defendant]'s written notice to [Ranch Mart] that such conditions precedent cannot be fulfilled to [defendant]'s satisfaction.

The closing date on the Sale Agreement was subsequently extended on several occasions by written amendments to the Sale Agreement, with a final closing date of June 30, 2001. However, the purchase of the property was never consummated. Ranch Mart has never asserted to plaintiff that either plaintiff or defendant breached the Sale Agreement by deciding not to close.

### 2. Assignment Agreement Between Plaintiff and Defendant

On August 5, 1999, plaintiff and defendant entered into an assignment agreement (hereinafter "Assignment Agreement") in which defendant assigned "all of [defendant]'s right, title and interest in and to the Sale Agreement" to plaintiff. The Assignment Agreement recited that defendant, as purchaser, entered into a Sale Agreement dated July 27, 1999, with respect to approximately sixty-five (65) acres at the southeast corner of 135th Street and Antioch in Overland Park. Further, it stated in the recital that defendant "has agreed, in consideration of the covenants herein contained, to assign unto [plaintiff], its successors and assigns, all of

[defendant]'s right, title and interest in and to the Sale Agreement."

The Assignment Agreement states that the agreement was entered into "in consideration of the mutual covenants herein contained," and that the parties (1) "simultaneously with the execution of this Agreement ... agree to execute and be bound by that certain Fee Agreement ... which ... governs the development of the real estate which is the subject of the Sale Agreement;" (2) that, as set forth above, defendant assigned all of defendant's right, title and interest in the Sale Agreement to plaintiff; (3) that plaintiff agreed it would not make future assignments of its interest in the Sale Agreement without first obtaining the written consent of [Ranch Mart] under the Sale Agreement; and (4) plaintiff agreed that, "in the event any other entity acquired any interest in the Sale Agreement or the real estate which is the subject of the Sale Agreement ... it will require such entity to deliver to [defendant] an agreement whereby such entity agrees to assume and be liable for [plaintiff]'s obligations under the Fee Agreement."

Mr. Turner stated that, at the time of the Assignment Agreement, defendant sought assurances that plaintiff had both the means and the intent to ultimately purchase the property once zoning changes had been obtained, and defendant received such assurance.

### 3. Fee Agreement Between Plaintiff and Defendant

Also on August 5, 1999, plaintiff and defendant entered into a fee agreement (hereinafter "Fee Agreement") under which defendant agreed to perform certain services in connection with the development of the property in exchange for a fee. The Fee Agreement designates plaintiff as "Owner," and defendant as "Developer," and states, in a section entitled "Background Statement," that "[plaintiff] intends to purchase certain Property (as defined below). In connection with the ownership and development of the Property, [plaintiff] agrees that certain fees may be earned by [defendant] upon the terms and conditions set forth below, and [defendant] agrees to perform certain services in connection with the development of the Property."

Plaintiff has not paid defendant any fees under the Fee Agreement. Mr. Turner stated that, in reliance upon "that contract language" [2] and the assurances from plaintiff, defendant devoted over twenty months of time, energy and money to developing and marketing the property, on the assumption that plaintiff would meet its obligations to purchase the property and pay defendant the agreed-upon compensation. Plaintiff does not dispute defendant's statements of fact indicating that plaintiff acted as if it would carry out the Sale Agreement; that plaintiff cooperated with zoning and plan approval processes, and other aspects of developing the property; and reassured defendant that it would close, with some of those assurances being made as recently as February 2001.

### C. Alleged Oral Contracts

#### 1. Summer 1999 Contract Between Plaintiff and Defendant

Mr. Turner stated that, at the time the three written agreements were entered into, agents of plaintiff orally stated that plaintiff would close on the Sale Agreement and purchase the 65 acres if the property was rezoned. Mr. Turner

---

**2.** Mr. Turner's affidavit does not state which contract to which Mr. Turner refers. The court infers from the context that it is the Sale Agreement, because that is the agreement Mr. Turner discusses most closely prior to the statement in question.

also stated that principals of plaintiff told him to purchase the property for plaintiff and to use the same form of document previously used with respect to the north parcel. Mr. Turner also stated that he believed plaintiff retained the right to approve the economics of leases and sales regarding the property.

### 2. Spring 2000 Contract Between Plaintiff and Defendant

Defendant sought authorization from the City of Overland Park to allow the property to be zoned for commercial and industrial use. At some point, however, Overland Park required that a portion of the 65 acres would be zoned for a business park as opposed to commercial zoning. Defendant asserts that plaintiff and defendant entered into an oral agreement in Spring 2000 (hereinafter "Spring 2000 Oral Contract"), whereby plaintiff agreed to close on the entire 65 acres and transfer the business park portion of the property to defendant. Defendant claims that the property was rezoned in October 2000. However, as discussed in the section regarding the Sale Agreement, plaintiff did not close on the property.

Defendant seeks to recover lost profits in the form of sales and brokerage commissions, a development fee, unearned market commissions, and an earnout fee relating to plaintiff's alleged breach of the two oral contracts.

### D. Defendant's Development of North Part of Tract After Plaintiff Determined not to Purchase Property

On June 22, 2001, Terra Venture Investments LLC[3] entered into an agreement with Ranch Mart to purchase 28.23 acres at the southeast corner of 135th Street and Antioch, Overland Park, Kansas (hereinafter the "Subsequent Sale Agreement"). The 28.23 acres contemplated under the Subsequent Sale Agreement encompassed the northern portion of the 65 acres which were subject to the initial Sales Agreement and did not encompass the business park portion of the property. The Subsequent Sale Agreement had an original closing date of June 21, 2002, but contained a provision extending the closing date automatically for one year to June 21, 2003, if defendant did not purchase the property before June 21, 2002. When defendant did not close on the entire 28 acres before June 21, 2002, the closing was extended to June 21, 2003. The subsequent Sale Agreement also contained a provision that upon the closing of all or any part of the 28 acres, Ranch Mart would pay Terra Venture Realty Inc., a company affiliated with Terra Venture, a commission of 3% of the sales price.

### E. Defendant's Development of the Business Park Located on the Southern Portion of the 65 Acre Tract after Plaintiff Decided not to Purchase the Property

On February 22, 2001, defendant entered into a Build to Suit Net Office Lease with Chrysler Financial Corporation that contemplated construction of an office building on the southern portion of the 65 acre tract. In June 2002, defendant assigned its rights under the Build to Suit Lease to an entity affiliated with Ranch Mart called 137th and Antioch LLC. On June 22, 2001, defendant entered into additional agreements with 137th and Antioch LLC and with Ranch Mart, which contemplated construction of a business park on the southern portion of the 65 acre tract.

---

**3.** There is no evidence in the record regarding the relationship between Terra Venture Investments LLC and defendant.

### F. Earnest Money

#### 1. Escrow Agent Returns Earnest Money to Defendant

Plaintiff paid the initial $50,000 earnest money deposit required under the Sale Agreement and then paid the additional earnest money deposit of $100,000 that was required under the Amendment to the Sale Agreement. From August 1999 to June 30, 2001, plaintiff incurred and paid over $200,000 in expenses related to the property, in addition to the $150,000 total earnest money deposit. However, plaintiff ultimately did not close on the property, and the June 30, 2001 closing date passed.

After plaintiff did not close on the Sale Agreement, on August 23, 2001, Mr. Turner and Robert D. Regnier, president of Ranch Mart, sent a letter to the Escrow Agent (hereinafter "August 23 letter") requesting it to return all earnest money deposited with the Escrow Agent to defendant.[4] The Escrow Agent returned approximately $158,000 in earnest money to defendant, representing the earnest money plus interest (hereinafter "Earnest Money"). In an affidavit, Mr. Regnier stated that, in co-signing the August 23 letter, he "fully intended that [defendant] Terra Venture, Inc. receive any and all rights Ranch Mart, Inc. had to the earnest money being held by Security Land Title Company related to the Sale Agreement dated July 27, 1999, between Ranch Mart, Inc. and [defendant] Terra Venture, Inc."

Plaintiff subsequently demanded that defendant return the Earnest Money to plaintiff. However, defendant has refused to do so. Defendant contends that it is entitled to keep the Earnest Money because plaintiff was contractually obligated to close on the Sale Agreement, and that plaintiff's failure to do so damaged defendant. As set forth in greater detail below, defendant contends that plaintiff failed to comply with paragraph 8(C) of the Sale Agreement, and consequently forfeited the Earnest Money to defendant.

#### 2. Plaintiff Alleges Failure of Conditions Precedent

The Sale Agreement provided three conditions precedent to the obligations of defendant and Ranch Mart, including "[defendant] obtaining, at [defendant's] expense, all requisite zoning and plan approvals for its intended development of the Land, together with binding commitments from the potential users of the Land." (Pl.'s Ex. 4, at ¶ 8(C)). Paragraphs 8(A) and 8(B) of the Sale Agreement set forth two additional conditions precedent: that the representations and warranties made by Ranch Mart as the seller be true and correct and that Ranch Mart shall have performed all covenants and obligations required by the Agreement on or before closing; and that upon the closing, Ranch Mart shall own free, clear, and marketable fee simple title to the property, respectively.

The Sale Agreement further provided:

> In the event the conditions set forth above are not all satisfied, [defendant] shall notify [Ranch Mart] of the failure of such condition precedent to be satisfied, in which event [defendant] shall have the option of terminating this Agreement, whereupon the Earnest Money shall be returned to [defendant]

---

4. The letter, which was signed after the Assignment Agreement, is designated as regarding the "Sale Agreement dated July 27, 1999 between Ranch Mart, Inc. as Seller and Terra Venture, Inc., as Purchaser." (Mem. in Supp. of Def.'s Mot. Summ. J. Ex. 5) The letter, signed by Mr. Turner on behalf of defendant and Mr. Regnier on behalf of Ranch Mart, also states, "[t]he undersigned Seller and Purchaser hereby direct you to return to Purchaser all earnest money deposited with you with respect to the referenced Sale Agreement." (*Id.*).

and this Agreement deemed null and void, provided provisions to the contrary notwithstanding, in the event [defendant] exercises its option to extend the Closing for an additional one hundred twenty (120) days, as contemplated at paragraph 3, [defendant] may terminate this Agreement and receive a refund of the Earnest Money if and only if the conditions precedent set forth at subparagraphs A and B above are not fulfilled or satisfied. Notwithstanding anything contained herein to the contrary, [defendant] at any time or times on or before Closing, in order to close, at its sole election, may waive any of the conditions to its obligations hereunder.

(*Id.* at ¶ 8).

Plaintiff asserts that defendant breached the Assignment Agreement by refusing to return the Earnest Money to plaintiff; that defendant would be unjustly enriched by being permitted to keep the Earnest Money; that the Earnest Money "belongs to plaintiff and was paid to defendant by mistake and in good conscience should be returned to plaintiff;" that defendant converted plaintiff's Earnest Money, and that defendant breached its fiduciary duties that it owed to plaintiff as a real estate broker by refusing to return the Earnest Money. Plaintiff also seeks punitive damages against defendant and seeks to recover its attorneys' fees, expert fees, and expenses incurred in defending against the counterclaim asserted by defendant.

Defendant, however, asserts that plaintiff waived its right to recover any Earnest Money by failing to provide written notice to Ranch Mart that conditions precedent set forth in the Sale Agreement had not been fulfilled. Defendant further claims that all of the conditions precedent set forth in the Sale Agreement were met, and that plaintiff therefore breached the Assignment Agreement and Fee Agreement. Defendant argues, in the alternative, that

if the conditions precedent were not satisfied, that plaintiff intentionally interfered with them and prevented them from being met. Defendant states that plaintiff's claim for attorneys' fees should be denied on the additional basis that the dispute over escrow is not covered by the attorneys' fee provision in the Fee Agreement. In addition, defendant raises the affirmative defense that plaintiff waived any claim under the contracts by encouraging and misleading defendant to believe that the sale would be consummated, and that defendant spent approximately two years working on the developing and marketing of the property. Defendant further asserts that plaintiff's claim is barred by the doctrine of estoppel.

## II. Legal Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" if it is "essential to the proper disposition of the claim." *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

In considering a summary judgment motion, the court views the evidence in the light most favorable to the non-moving party. *Wilson v. Meeks*, 98 F.3d 1247, 1253 (10th Cir.1996). The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Adler*, 144 F.3d at 670–71. A movant that does not bear the ultimate

burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. The non-moving party, however, may not "rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir.1988). Instead, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505.

### III. Defendant's Motion for Summary Judgment

Defendant seeks summary judgment on the grounds that plaintiff may not recover the Earnest Money due to plaintiff's failure to close on the Sale Agreement. According to defendant, plaintiff forfeited to Ranch Mart any of plaintiff's right to the Earnest Money in escrow.[5] Consequently, according to defendant, Ranch Mart was entitled to receipt of the Earnest Money. As such, the August 23 letter signed by Mr. Regnier of Ranch Mart and Mr. Turner of defendant addressed to the Escrow Agent validly conveyed the Earnest Money from Ranch Mart to defendant.

Plaintiff asserts it is entitled to a return of the Earnest Money based upon the following theories: (1) that defendant breached the Assignment Agreement by asserting ownership of the Earnest Money; (2) that payment of the Earnest Money to defendant unjustly enriched defendant; (3) under a "money had and received" theory, that plaintiff had paid the Earnest Money to Ranch Mart in the first place and that, therefore, in good conscience, the money should be returned to plaintiff; (4) conversion; and (5) that defendant breached its fiduciary duty owed to plaintiff, where defendant acted as a real estate broker for plaintiff. Defendant counters by arguing that plaintiff's obligation to close on the property was conditioned upon plaintiff receiving binding commitments from land users that met with plaintiff's approval, as set forth in paragraph 8(C) of the contract. Plaintiff argues that, because it did not obtain satisfactory commitments, a condition precedent to closing on the contract was not met and, consequently, plaintiff did not forfeit its right to receive the earnest money.

In response, defendant argues that (1) plaintiff waived its interest in return of the Earnest Money by failing to provide written notice to Ranch Mart of a failure of the condition precedent set forth in paragraph 8(C) of the Sale Agreement; thus, plaintiff forfeited any of its right in the Earnest Money to Ranch Mart, and Ranch Mart's subsequent direction to the Escrow Agent to transfer the Earnest Money to defendant was valid; (2) that because plaintiff concealed its intention never to close on the agreement, plaintiff is estopped from claiming it is entitled to a return of the Earnest Money; and (3) defendant is entitled to a setoff due to the counterclaims asserted by defendant and discussed later in the opinion.

---

**5.** Defendant asserts two bases upon which it contends plaintiff forfeited the Earnest Money to Ranch Mart: (1) the extension of the Sale Agreement closing date to July 27; and (2) the failure of plaintiff to notify Ranch Mart of any failure of a condition precedent, as required by the July 27 Sale Agreement.

## A. Contract Interpretation Principles

First, the court notes that its primary function in construing a contract is "to determine the parties' intent from the four corners of the instrument by construing all provisions together and in harmony with each other rather than by critical analysis of a single or isolated provision." *Metro. Life Ins. Co. v. Strnad,* 255 Kan. 657, 671, 876 P.2d 1362, 1371 (1994) (citations omitted). Further, the court must apply this rule prior to considering any extrinsic evidence regarding the intent of the parties. *Id.* (citations omitted). "Where the language of the contract is clear and can be carried out as written, there is no room for construction or modification of the terms." *Id.*

## B. Analysis

### 1. Breach of Assignment Agreement

Defendant argues that Ranch Mart, rather than plaintiff, was entitled to receive the Earnest Money, and that Ranch Mart's request to the Escrow Agent that the Escrow Agent pay the funds to defendant was therefore valid. The Assignment Agreement was executed on August 5, 1999. It is unclear from the record whether either Ranch Mart or the Escrow Agent knew or should have known of the assignment, though it is undisputed that plaintiff, rather than defendant, paid the Earnest Money to the Escrow Agent. As discussed above, on August 23, 2001, Mr. Turner, as President of defendant, and Mr. Regnier, as President of Ranch Mart, wrote to the Escrow Agent in a letter captioned "Re: Sale Agreement dated July 27, 1999 between Ranch Mart, Inc., as Seller and Terra Venture, Inc., as Purchaser." In the August 23 letter, Mr. Turner and Mr. Regnier stated, "the undersigned Seller and Purchaser hereby direct you to return to Purchaser all earnest money deposited with you with respect to the referenced Sale Agreement and the referenced title commitment file." The Escrow Agent subsequently paid the Earnest Money to defendant.

The court first examines the Assignment Agreement between plaintiff and defendant. As noted above, the Assignment Agreement stated that defendant assigned to plaintiff "all of [defendant]'s right, title and interest in and to the Sale Agreement." The parties do not seek to introduce any extrinsic evidence regarding the Assignment Agreement. In examining the plain language of the Assignment Agreement, the court determines that the parties' intention in using the broad terminology "all of [defendant]'s right, title and interest in and to the Sale Agreement," was to assign to plaintiff the entirety of the benefits to which defendant was entitled under the Sale Agreement. By assigning its rights under the Sale Agreement, defendant manifested its intention to transfer to plaintiff defendant's right to Ranch Mart's performance of the contract. *See Restatement (Second) of Contracts* § 317. Defendant concurrently extinguished its own right to Ranch Mart's performance and, consequently, to any return of Earnest Money as provided for in the Sale Agreement. Therefore, defendant assigned to plaintiff any right that defendant had as an original party to the Sale Agreement, including any right to a return of the Earnest Money.

Defendant argues that defendant did not breach the Assignment Agreement because plaintiff forfeited its rights in the Earnest Money to Ranch Mart under the Sale Agreement. Defendant does not, however, address plaintiff's argument that defendant breached the Assignment Agreement by asserting an interest in the Earnest Money and permitting the Escrow

Agent to deliver the Earnest Money to defendant.

According to defendant, Ranch Mart was entitled to receive the Earnest Money. Therefore, Ranch Mart and defendant's letter directing the Escrow Agent to pay the Escrow Money to defendant represented a transfer of Ranch Mart's interest and was therefore valid. Defendant states plaintiff forfeited its rights to the Earnest Money by failing to provide notification of a failure of a condition precedent and that no condition precedent in fact was unsatisfied. Plaintiff, however, asserts that the condition precedent set forth in paragraph 8(C) of the Sale Agreement was never met and, therefore, that plaintiff was entitled to receive the Earnest Money. Paragraph 8(C) sets forth the condition precedent that defendant would obtain, "at [defendant]'s expense, all requisite zoning and plan approvals for its intended development of the Land, together with binding commitments from the potential users of such Land." The Sale Agreement was amended in December 1999 because plaintiff could not find a binding commitment from a potential user of the land. Thus, according to plaintiff, plaintiff became entitled to a return of the Earnest Money under paragraph 8 of the Sale Agreement.

As set forth in the fact section of this opinion, the parties extended the closing date through an amendment in December 1999. Defendant, in its reply, admits that the December 1999 amendment restored plaintiff's right to not close due to a failure of the condition precedent under paragraph 8(C) of the Sale Agreement, but only if the failure of the condition precedent occurred prior to the May 1, 2000 closing date, and notice of that failure was communicated to Ranch Mart prior to May 1, 2000.[6] Plaintiff admits that it did not

notify Ranch Mart of a failure of any condition precedent.

 Plaintiff contends that, even though it did not provide notice of the failure of the condition precedent, it was entitled to a return of the Earnest Money on the May 1, 2000 closing date. The parties agree that plaintiff did not waive the conditions in paragraph 8. However, the parties dispute whether plaintiff, in good faith, failed to receive binding commitments from potential purchasers of the land.

Following the principles of contract construction set out above, the court finds that plaintiff's contention that it was entitled to a return of the Earnest Money on May 1, 2000, must be read in conjunction with the language that occurs earlier in Paragraph 8(C). That language limits plaintiff's right to a return of the Earnest Money to circumstances in the event that the conditions precedent set forth at paragraph 8 of the Sale Agreement are not fulfilled *to plaintiff's satisfaction* or waived by plaintiff. Moreover, the contract states plaintiff is entitled to a return of the money upon the earlier of the closing date *or* plaintiff's written notice to Ranch Mart of a failure of the conditions precedent. Consequently, the court finds that defendant's argument that plaintiff cannot recover the Earnest Money due to its failure to provide written notice is not dispositive. If, in fact, the condition precedent genuinely was not met to plaintiff's satisfaction, under the plain language of the December 1999 Amendment, the plaintiff would still be entitled to a return of the Earnest Money upon the Closing Date, regardless of whether plaintiff gave notice.

 Under Kansas law, a party may not "escape liability" under a contract

---

**6.** As noted above, the closing was eventually extended to June 30, 2001; however, the parties do not discuss the effect of any subse-

quent amendments after the December 1999 Amendment.

merely by claiming that a condition precedent was not met. *Barbara Oil Co. v. Patrick Petroleum Co.*, 1 Kan.App.2d 437, 440, 566 P.2d 389, 393 (1977). Rather, the party seeking to avoid liability "must affirmatively show that (1) the condition precedent actually failed and (2) that because of such failure, the contract [would] not be performed." *Id.* Whether a party's refusal to perform a contract was "because of a genuine and good faith claim that a condition precedent failed is a question for the jury." *Id.; see also Hill v. Perrone*, 30 Kan.App.2d 432, 436, 42 P.3d 210, 214 (2002) (same). Accordingly, the court finds that plaintiff's contention that the conditions precedent set forth in paragraph 8(C) of the Sale Agreement, were not, in good faith, met to plaintiff's satisfaction, presents a genuine issue of material fact that must be determined by a jury. Defendant's motion for summary judgment is denied.

### 2. "Improper Party" Defense

■ Defendant also asserts that the court should not permit plaintiff to defend against defendant's counterclaims by asserting that only a licensed real estate broker can receive the commissions for which defendant seeks to recover damages. Plaintiff claims that, because defendant is not a licensed real estate broker, it could not receive such commissions. In its motion for summary judgment, defendant characterizes this defense as an "improper party" defense. Defendant requests the court to find that plaintiff is barred from presenting this argument due to plaintiff's failure to raise the defense prior to the deadline of March 25, 2002, which the court established in its March 6, 2002 Scheduling Order.

The Scheduling Order stated that any motions to dismiss for lack of personal jurisdiction, venue, propriety of the parties, or failure to state a claim upon which relief may be granted shall be filed by March 25, 2002.

The court finds that plaintiff's defense concerns defendant's entitlement to certain damages that defendant seeks. It is not an improper party defense, because plaintiff is not challenging defendant's status as a real party in interest or defendant's capacity to sue or be sued under Federal Rule of Civil Procedure 17. Rather, plaintiff's defense concerns the amount of damages that can be awarded to defendant as a required element of defendant's prima facie case. To the extent defendant's motion for summary judgment requests the court to find that plaintiff should be precluded from asserting this defense, defendant's motion is denied.

### IV. Plaintiff's Motion for Summary Judgment

Defendant has raised the following counterclaims: (1) that plaintiff breached "the August 1999 contracts," i.e., the Assignment Agreement and Fee Agreement, by failing to close on the Sale Agreement, and by failing to pay defendant certain fees in connection with the property; (2) that plaintiff breached the Spring 2000 Contract to purchase a portion of the property from defendant; (3) that plaintiff breached a fiduciary duty owed to defendant by breaching the Assignment Agreement and Fee Agreement and failing to close on the Sale Agreement, and by failing to pay defendant certain fees in connection with the property; (4) that plaintiff breached a fiduciary duty owed to defendant by breaching the Spring 2000 Contract to purchase a portion of the property from defendant; (5) fraudulent inducement with regard to the August 1999 contracts; and (6) fraudulent inducement with regard to the Spring 2000 contract.

## A. Breach of the Assignment Agreement and Fee Agreement

First, plaintiff argues that the written contracts do not grant defendant the contractual right to sue if plaintiff did not purchase the property from Ranch Mart. Specifically, plaintiff states that defendant may not sue plaintiff for a violation of the Sale Agreement, because no language in the Sale Agreement provides that plaintiff could be amenable to suit for its breach.

In addition, plaintiff contends that no operative language of the Assignment Agreement or Fee Agreement required plaintiff to purchase the property. According to plaintiff, the parties' obligations under these agreements were not conditioned upon plaintiff's purchase of the property.

The court finds that the parties have shown a genuine issue of material fact exists regarding the damages that can be recovered under the Assignment Agreement and the Fee Agreement. Whether plaintiff's conduct in failing to consummate the purchase of the property was wrongful must be determined by a jury. Further, the court finds that a genuine issue of material fact exists regarding whether plaintiff's purchase of the property was a condition precedent contemplated by the parties under the Assignment Agreement and Fee Agreement. Plaintiff's motion is denied.

## B. Breach of Oral Contracts

Plaintiff moves the court for summary judgment in regard to defendant's contention that statements by representatives of plaintiff in Summer 1999 and Spring 2000 created contractual obligations between the parties. As set forth above, defendant claims agents of plaintiff orally stated that plaintiff would close on the Sale Agreement and purchase the 65 acres if the property was rezoned. Further, defendant states plaintiff agreed to close on the entire 65 acres and transfer the business park portion of the property to defendant. Plaintiff contends that, as a matter of law, the oral statements did not create valid contracts under the statute of frauds and the parol evidence rule.

The statute of frauds provides in relevant part that, "no action shall be brought ... upon any contract for the sale of lands, tenements, or hereditaments, or any interest in or concerning them ... unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged." Kan. Stat. Ann. § 33–106. The Kansas Supreme Court has held that: "[a] memorandum, in order to be enforceable under the statute of frauds, may be any document or writing, formal or informal, signed by the party to be charged or by his lawfully authorized agent, which states with reasonable certainty (a) each party to the contract either by his own name, or by such a description as will serve to identify him, or by the name or description of his agent, (b) the land or other subject matter to which the contract relates, and (c) the terms and conditions of all the promises constituting the contract and by whom and to whom the promises are made." *Clark v. Larkin,* 172 Kan. 284, 287, 239 P.2d 970, 973 (1952) (citing *Restatement (First) of Contracts* § 207).

Here, there is no writing in the record memorializing the terms of the alleged oral agreements. Because the alleged oral statements by plaintiff concern the purchase of property, they cannot constitute a valid contract under the statute of frauds. Moreover, defendant has not asserted that any exception to the statute of frauds applies in this case. Accordingly, the court grants plaintiff's motion for summary judgment as it relates to the alleged oral contracts.

## C. Breach of Fiduciary Duty

■■■■ Defendant states that plaintiff breached a fiduciary duty it owed to defendant by failing to pay defendant the monies set forth in the Fee Agreement and Assignment Agreement.

Under Kansas law, a fiduciary relationship is never presumed, but must be proved by clear and convincing evidence. Fiduciary obligations should be extended reluctantly to commercial or business transactions. There are two types of fiduciary relationships generally recognized in Kansas: "(1) those specifically created by contract such as principal and agent, attorney and client, and trustee cestui que trust, for example, and those created by formal legal proceedings such as guardian and/or conservator and ward, and executor and administrator of an estate, among others and (2) those implied in law due to the factual situation surrounding the involved transactions and the relationship of the parties to each other and to the questioned transactions."

*Flight Concepts Ltd. P'ship v. Boeing Co.,* 819 F.Supp. 1535, 1545 (D.Kan.1993) (citations omitted). Conscious assumption of the alleged fiduciary duty is a mandatory element for the existence of a fiduciary duty. *Id.* To this end, "[m]ere concert of action without more, does not establish a fiduciary relationship.... Undoubtedly, parties may deal at arm's length for their mutual profit. It is only when, by their concerted action, they willingly and knowingly act for one another in a manner to impose mutual trust and confidence that a fiduciary relationship arises." *Wolf v. Brungardt,* 215 Kan. 272, 285, 524 P.2d 726, 736 (1974).

After having reviewed the record, the court finds plaintiff has demonstrated that no genuine issue of material fact remains as to whether a fiduciary relationship existed between the parties. There has been no showing that plaintiff consciously assumed the role of fiduciary. Furthermore, there are no facts that would justify a finding that defendant placed special trust or confidence in plaintiff. Accordingly, the court grants summary judgment as to defendant's breach of fiduciary duty counterclaims.

## D. Fraudulent Misrepresentation

■■■ Defendant also argues that plaintiff misrepresented its intention to purchase the property at issue, and that defendant justifiably relied upon plaintiff's statements and was damaged. In support of this claim, defendant has put forth evidence which may indicate that, for the property in question, plaintiff departed from its standard procedure by not preparing a written pro forma regarding what plaintiff's estimated return on the investment would be.

■■■■ Under Kansas law, "[w]hen alleged fraud relates to promises or statements concerning future events, the gravamen of such a claim is not the breach of the agreement to perform, but the fraudulent representation concerning a present, existing intention to perform when such intention is in fact nonexistent." *Smith v. MCI Telecoms. Corp.,* 755 F.Supp. 354, 356–57 (D.Kan.1995) (citing *K–B Trucking Co. v. Riss Int'l Corp.,* 763 F.2d 1148, 1156 (10th Cir.1985)). To succeed on this claim, defendant must prove that plaintiff never intended to perform upon its promises to purchase the property and to pay defendant under the Fee Agreement; that the promises were made with the intent to deceive and to induce defendant into entering into the Fee Agreement and Assignment Agreement; that defendant reasonably relied upon the promises; and that defendant sustained damages thereby. *Id.* (citing *Mackey v. Burke,* 751 F.2d 322, 328 (10th Cir.1984)).

Here, the court finds a genuine issue of material fact remains regarding whether plaintiff had an intent to perform the agreements. The court denies plaintiff's motion for summary judgment as to plaintiff's fraudulent inducement claim.

### E. Uncertain Damages

Plaintiff claims that defendant's lost profit calculation for the alleged breach of the second oral contract is based upon speculation. Because the court has granted summary judgment as to that contract, the court finds this issue is moot.

### F. Earnest Money Under Sale Agreement

Finally, plaintiff moves the court for summary judgment on the grounds that plaintiff is entitled to receive the $158,000 in Earnest Money. As set forth above, the court has found that genuine issues of material fact relating to this claim preclude entry of summary judgment. Plaintiff's motion is denied to the extent it seeks a judgment as to the Earnest Money.

### V. Order

**IT IS THEREFORE ORDERED THAT** defendant's Motion for Summary Judgment (Doc. 61) is denied in its entirety.

**IT IS FURTHER ORDERED THAT** plaintiff's Motion for Summary Judgment (Doc. 57) is granted in part and denied in part. Plaintiff's motion is granted as to the defendant's counterclaims for breach of the oral contracts and breach of fiduciary duty. Plaintiff's motion is denied as to defendant's counterclaims for breach of the Assignment Agreement and Fee Agreement and for fraudulent inducement. Plaintiff's motion is also denied as to plaintiff's argument that defendant's damages are uncertain, and is further denied to the extent plaintiff asserts it is entitled to receive $158,000 in Earnest Money.